FILED

2022 Aug-23  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| COREY THOMAS; TINETTA JACKSON; KEYARAH SMITH; BEN BLACKWELL; JAMES DONAHUE; GERALD SMITH; BRITTANY TODD; ZACKERY HARRIS; ANGELA CRAWFORD; ROGER GRACE; JOHN "J.D." WALKER; DANIEL KILGORE; SEAN JONES; and DARREN LeCROY; on behalf of themselves and those similarly situated as described below, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | CIVIL ACTION NO.: 2:22-cv-00157-AMM |
| THE TOWN OF BROOKSIDE, ALABAMA, a municipal corporation; JETT'S TOWING, INC.; DALTON BRODY; JOHN CAMPBELL; DeSHAWN COOK; KYLE EFFERSON; RICHARD JAYNES; MICHAEL JONES; BENJAMIN LOEBLER; WENDY LONG; CHRISTOPHER ROBERTSON; JAMES SAVELLE, III; MARCUS SELLERS; BILLY SHOULTS; ROBERT STEWART; SYDNI THOMPSON; TIMOTHY TURNER; MARESHA MOSES; ANTHONY RAGSDALE; BRADLEY SINGLETON; WILLIAM BYNUM; IVORY PRICE; PATRICK HOWELL; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

JON ATKINSON; and JUSTIN      )
REESER;                       )
                              )
      Defendants.               )

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Corey Thomas; Tinetta Jackson; Keyarah Smith; Ben Blackwell; James Donahue; Gerald Smith; Brittany Todd; Zackary Harris; Angela Crawford; Roger Grace; John "J.D." Walker; Daniel Kilgore; Sean Jones; and Darren LeCroy (sometimes collectively referred to as "Plaintiffs"), on behalf of themselves and a putative class of similarly situated individuals, states the following as their Second Amended Complaint against Town of Brookside ("Brookside" or "The Town"), Alabama; Jett's Towing, Inc. ("Jett's Towing"); and Dalton Brody; John Campbell; DeShawn Cook; Kyle Efferson; Richard Jaynes; Michael Jones; Benjamin Loebler; Wendy Long; Christopher Robertson; James Savelle, III; Marcus Sellers; Billy Shoults; Robert Stewart; Sydni Thompson; Timothy Turner; Maresha Moses; Anthony Ragsdale; Bradley Singleton; William Bynum; Ivory Price; Patrick Howell; Jon Atkinson; and Justin Reeser.  This Second Amended Complaint is filed as a matter of course under Fed. R. Civ. P. 15(a)(2)and relates back to the original Complaint filed in this action.

## I. PARTIES

1.     Corey Thomas is over the age of nineteen (19), and is a resident of Shelby County, Alabama.

2.      Tinetta Jackson is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

3.      Keyarah Smith is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

4.      Ben Blackwell is over the age of nineteen (19), and a resident of Aiken County, South Carolina.

5.      James Donahue is over the age of nineteen (19), and a resident of Aiken County, South Carolina.

6.      Gerald Smith is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

7.      Brittany Todd is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

8.      Zackery Harris is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

9.      Angela Crawford is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

10.     Roger Grace is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

11.     John "J.D." Walker is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

12.     Daniel Kilgore is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

13.     Sean Jones is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

14.     Darren LeCroy is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

15.     Defendant Town of Brookside, Alabama, is a municipal corporation organized under the laws of the State of Alabama, and subject to suit.

16.     Dalton Brody was a police officer employed by the Town of Brookside over the last three years.

17.     John Campbell was a police officer employed by the Town of Brookside over the last three years.

18.     DeShawn Cook was a police officer employed by the Town of Brookside over the last three years.

19.     Kyle Efferson was a police officer employed by the Town of Brookside over the last three years.

20.     Richard Jaynell was a police officer employed by the Town of Brookside over the last three years.

21.     Michael "Mike" Jones was the Chief of Police employed by the Town of Brookside over the last three years.

4

22.   Benjamin Loebler was a police officer employed by the Town of Brookside over the last three years.

23.   Wendy Long was a police officer employed by the Town of Brookside over the last three years.

24.   Christopher Robertson was a police officer employed by the Town of Brookside over the last three years.

25.   James Savelle, III was a police officer employed by the Town of Brookside over the last three years.

26.   Marcus Sellers was a police officer employed by the Town of Brookside over the last three years.

27.   Billy Shoults was a police officer employed by the Town of Brookside over the last three years.

28.   Robert Stewart was a police officer employed by the Town of Brookside over the last three years.

29.   Sydni Thompson was a police officer employed by the Town of Brookside over the last three years.

30.   Timothy Turner was a police officer employed by the Town of Brookside over the last three years.

31.   Marsha Moses was a police officer employed by the Town of Brookside over the last three years.

32.    Anthony Ragsdale was a police officer employed by the Town of Brookside over the last three years.

33.    Bradley Singleton was a police officer employed by the Town of Brookside over the last three years.

34.    William Bynum was a police officer employed by the Town of Brookside over the last three years.

35.    Ivory Price was a police officer employed by the Town of Brookside over the last three years.

36.    Patrick Howell was a police officer employed by the Town of Brookside over the last three years.

37.    Jon Atkinson was a police officer employed by the Town of Brookside over the last three years.

38.    Justin Reeser was a police officer employed by the Town of Brookside over the last three years.

39.    The defendants named in paragraphs 16-38 were all police officers with the Town of Brookside over the last three years.  These defendants are referred to collectively herein as the "Individual Officer Defendants."  Each of the Individual Officer Defendants, coordinated through the directives of the Chief of Police, Mike Jones, acted in concert to commit the acts necessary to perpetrate the violations herein.  Each knew that they were violating the constitutional, statutory, and

common law rights of the Classes pled herein, and did so to create more revenue for the Town of Brookside so that they, in turn, could enjoy the fruits of that revenue in the form of pay, benefits, equipment, and receipt of the profits from policing as described herein.

40.    Jett's Towing, Inc. ("Jett's Towing"), is an Alabama corporation with its principal place of business in Adamsville, Alabama.

## II.  <u>JURISDICTION AND VENUE</u>

41.    This Court has jurisdiction over this case under 28 U.S.C. § 1331, Federal Question jurisdiction, because the case is a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983, for violation of the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.  The Court further has supplemental jurisdiction over the State law claims made herein pursuant to 28 U.S.C. § 1367 because they are substantially related to the Federal claims.

42.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2), as this is the Judicial District and Division in which a substantial part of the events and omissions giving rise to the claim occurred.

## III.  <u>FACTS OF THE CASE</u>

43.    The small Town of Brookside, Alabama is located along Interstate 22 in north Jefferson County, Alabama.  The population of Brookside is approximately 1,253.  While there is a small portion of Interstate 22 that is within 1.5 miles of the

corporate limits of the Town of Brookside, none of the alleged violations resulting in the traffic stops made the basis of the claims of Subclass A herein, represented by Plaintiffs Blackwell, Donahue, and Thomas, occurred within 1.5 miles from the corporate limits of the Town of Brookside.

44.     Despite its small population, Brookside has a prolific police department that is well-known for using its police powers to "shake down" Brookside residents and those who pass through Brookside for excessive fines, penalties and municipal court costs.

45.     Brookside officers regularly travel outside of the police jurisdiction of Brookside to levy excessive fines, penalties, and municipal court costs.

46.     Brookside's ticketing and property confiscation practices generate revenue that supports its general fund, police department and municipal court, a practice colloquially known as "policing for profit" or "taxation by citation." Brookside Police officers regularly confiscated and improperly retained personal property during traffic stops.

47.     Upon information and belief, due to the recent intense scrutiny Brookside has been confronted with, its police chief, Mike Jones, his second in charge, James Savelle, III and many officers have separated from the police department.

8

48.     Brookside has effectuated a scheme whereby it has been able to amass a small army as a police force through ill-gotten fines and seizures.

49.     While Brookside has fewer than 1,500 residents, it had a police force far in excess of any rationally necessary number, SWAT team training for its officers, and an armored riot control vehicle.

50.     In 2018, Brookside had one full-time police officer, and wrote traffic citations that generated $82,467.00, in fines.  Those revenues have skyrocketed since 2018; up to $610,000.00, in 2020.

51.     All of this occurred in a town that has only one business, a Dollar General Store, and no stoplights.

**A.     Facts Relating to Corey Thomas.**

52.     Corey Thomas is a resident of Shelby County, Alabama.

53.     On or about December 19, 2020, Mr. Thomas was driving his recently-purchased Ducati motorcycle, with a passenger properly seated behind him, on Interstate 22 in Jefferson County, Alabama.

54.     Since Mr. Thomas had recently purchased the motorcycle, he had not yet obtained a license plate for the vehicle.

55.     As he was lawfully operating his motorcycle beyond 1.5 miles from the Town of Brookside's corporate limits, Mr. Thomas was pulled over by a Brookside police officer, identified in the Alabama Uniform Traffic Ticket and Complaint only

9

as "Agent MM." The alleged violations and the traffic stop occurred pn Interstate 65, well outside of the police jurisdiction of Brookside, i.e., as plead below beyond 1.5 miles from the corporate limits of Brookside.

56.     As Agent MM pulled up next to Mr. Thomas, Mr. Thomas indicated by hand gesture that he was pulling over on the upcoming off ramp.

57.     Before Mr. Thomas could pull over as indicated, Agent MM veered in front of him and abruptly stopped, causing Mr. Thomas and his passenger to be thrown from the motorcycle. Mr. Thomas' motorcycle was severely damaged, and his passenger was taken to the hospital for treatment of her injuries.

58.     Although Mr. Thomas did not violate any state law or municipal ordinance, Mr. Thomas was arrested and wrongfully charged with several misdemeanor crimes, including second degree criminal mischief, reckless driving, carrying a concealed weapon, reckless endangerment and third-degree assault. As a result of the charges, and like other members of the putative class, Mr. Thomas was assessed fines and costs.

59.     In addition to causing Mr. Thomas to crash his motorcycle, Brookside confiscated (and never returned) the pistol carried in his passenger's backpack, for which she had a valid carry permit[1]. Brookside also confiscated Mr. Thomas' Apple

---

[1] Mr. Thomas was wrongfully charged with having a concealed weapon. The pistol was in the possession of his passenger who had a valid pistol permit.

iPhone, air pods, and helmet, which he later located at the home of the arresting officer by using Apple's "Find my iPhone" feature.

60.    Mr. Thomas was thereafter released, but the Town refused to release his property to him.

61.    Following the accident, Mr. Thomas' property insurer sought to evaluate the damage to the motorcycle.

62.    Brookside refused to allow Mr. Thomas' insurer to inspect the motorcycle and instead contacted and turned the motorcycle over to the lienholder of the motorcycle, without notice to Mr. Thomas.

63.    As a result of Brookside's refusal to allow Mr. Thomas' insurer to inspect the damaged motorcycle, his insurer refused coverage for the motorcycle.

64.    Therefore, Mr. Thomas was responsible for the full amount of the debt owed on the motorcycle despite being deprived of the motorcycle.  Among other things, Brookside's actions have adversely affected Mr. Thomas' credit rating.

65.    It is no wonder that Mr. Thomas's property was never returned to him. In the recently released Town of Brookside Examination of Public Accounts Report, Ex. A hereto, the State of Alabama Department of Examiners of Public Accounts found that cash was not properly accounted for from seizures and property seized from individuals' incident to arrests were not inventoried and stored properly, leading to seized property being in police custody, but not inventoried in any way,

so there was functionally no way in many instances that seized property could be accounted for or returned to its rightful owners.

66.     Over a year since his arrest, the charges against Mr. Thomas remain pending and unresolved.

**B.     Facts Relating to Tinetta Jackson.**

67.     Tinetta Jackson was stopped by the Brookside Police Department while travelling on Interstate 22 near the Brookside exit.

68.     Ms. Jackson was charged with an expired tag and fined $410.

69.     Ms. Jackson pled guilty to the allegation because her tag was expired. However, she did not go to court, and has been paying on her fine via a payment plan.

70.     Despite Ms. Jackson's cooperation, and the fact that she pled guilty to the charges, she was fined $410.00, which is considerably more than allowed for by Alabama law.

71.     While this amount is within the limits set by Alabama Code §11-45-9 (1975), for ordinance violations, it is a fine motivated by the profit motive of the Town, Brookside, its police department, and the municipal court.

72.     As noted in the recent filing by the United States in a similar case, Coleman v. Town, Brookside, Civil Action No. 2:22-CV-00423-RDP, fines, collections, and seizures ballooned in 2018, when new Police Chief, Mike Jones,

was hired. Between 2018 and 2020, towed and impounded cars went from 50 to 789, and traffic citations rose from 382 to 3024. By 2020, revenues from fines, fees, and forfeitures made up approximately 49% of Brookside's annual revenue.

73.    It is true that the vast majority of the fines and fees collected went to the police department to make it beyond bloated. However, the largess trickled down to the town, Brookside Municipal Court, Brookside Municipal Court Judge, and the Brookside town attorney.

74.    In the same time period referenced above, when fines, citations, and revenues exploded, the municipal court judge's salary more than doubled, and the town's attorney's salary increased over $50,000.00.

75.    Due process requires not only a meaningful hearing, but an impartial and disinterested tribunal.

76.    In this case, it is clear that none of the plaintiffs received an impartial tribunal.

77.    The Brookside City Council appointed the municipal court judge, who then assessed fines and fees that make up almost half of the town of Brookside budget, which pays his salary.

78.    The municipal court, <u>writ large</u>, is responsible for creating the revenue that funds nearly half the town's budget, including the City Council members, who are paid by those same fines and fees. In a word, all of these entities are incentivized

to maximize fee and fine revenue. Each of these actors work in concert to create a revenue stream from citizens like plaintiffs in this case. The more revenue created, the more money available for the town, Brookside Municipal Court, the prosecutor, the city council, and the police department.

79.     The tie between the fee and fine apparatus described above and Plaintiffs is a substantial due process violation. Even if the judge had no actual bias, when the revenue stream creates and untenable risk of bias, there is a violation. The more citations written, the more cases for the municipal court; the more fines and fees created through those cases, assessed by the municipal court; the more money to pay the police officers, municipal court personnel, and including the prosecutor, and the city council. This incentive structure, existing in every case, is unconstitutional, Celiste v. Cantrell, 937 F.3d 525,530 (5th Cir. 2019).

80.     Actual bias need not even be shown for there to be a due process violation. The proper inquiry "is not whether a particular man succumbed to temptation, but whether the economic realities make the design of the system vulnerable to a possible temptation. Brown v. Vance, 637 F.2d 272, 284 (5th Cir. 1981). In this case, the entire system is designed so that each party has a personal interest in creating more revenue from traffic stops.

81.     The neutrality requirement is not limited to courts and court personnel and the city council, it also includes police officers.

14

82.   Law enforcement officers, including prosecutors, operate under impermissible conflicts when there is a realistic possibility that their judgement will be distorted by the prospect of institutional gain through zealous enforcement efforts. Marshall v. Jerrico, Inc., 446 U.S. 238, 250 (1980). All parties stand to profit from enforcement decisions. This creates impermissible institutional interests.

83.   Ms. Jackson was fined $410.00 by the Town of Brookside, when the fine for an expired tag is $20.00, according to the Alabama Rules of Judicial Administration, and Municipal Court Costs are $172.00, as pled with more particularity below. She was assessed this fine as part of a guilty plea, as opposed to going to a trial.

84.   Ms. Jackson's $410.00 fine for an expired tag fine was excessive, as pled more particularly below, because it was in excess of that allowed by Alabama law, making it, by definition excessive and disproportionate to the offense alleged. More importantly, it was the product of a system that incentivized the imposition of excessive fines and fees.

**C.   Facts Relating to Keyarah Smith.**

85.   Keyarah Smith was pulled over by the Town of Brookside Police Department on or about December 13, 2019, while driving within the police jurisdiction of the Town of Brookside.  Ms. Smith was given no reason for her traffic stop.

15

86.     Ms. Smith was ticketed for failing to have insurance.  Ms. Smith had insurance through Geico at the time, however, because of poor cell reception in rural Jefferson County, Ms. Smith could not pull up the app on her phone to show proof of insurance.

87.     As pled with greater particularity below, Ms. Smith was fined in excess of the amount allowed by Alabama law, thus, her fines were by definition excessive and disproportionate to the offense alleged.

**D.     Facts Relating to Ben Blackwell and James Donahue.**

88.     Plaintiffs Blackwell and Donahue were stopped by Brookside Police officers on I-22, not within 1.5 miles of the corporate limits of the Town of Brookside.  Plaintiffs were traveling on the Interstate going from South Carolina to Oklahoma on a hunting trip.

89.     Plaintiffs Blackwood and Donahue were arrested, taken to the Town of Brookside's Police Department where they were photographed, and charged with possession of a stolen firearm.  Plaintiffs' truck was towed to an impound lot.

90.     While Blackwell and Donahue did have firearms in their possession (they were going on a hunting trip), none of them were stolen, and all were legally and properly licensed.

91.     Blackwell and Donahue were jailed for a number of hours.  Finally, the Town of Brookside Police Officers released Blackwell and Donahue without

charging them with a crime.  However, the Town of Brookside confiscated a pocket knife carried by Mr. Blackwell during the arrest, and never returned it.

**E.    Facts Relating to Gerald Smith.**

92.    In August of 2019, Mr. Smith was traveling in the Town of Brookside when he was pulled over by a Town of Brookside Police officer.

93.    Mr. Smith's car was impounded, and he had to pay a fine to have his car released from impound.  The payment Mr. Smith made to release his vehicle operated as a fine because it extracted a payment from Mr. Smith in exchange for his vehicle.  Austin v. United States, 509 U.S. 602, 609-10 (1993).  The seizure, impoundment, and extraction of payment were carried out using the police power of the Town of Brookside.  The Town of Brookside did not even file an action under Alabama's Civil Forfeiture Act, Ala. Code § 20-2-93, against Mr. Smith.

94.    Mr. Smith was charged with possession of marijuana and fined less than the $5,000.00 maximum fine.

**F.    Facts Relating to Brittany Todd.**

95.    Brittany Todd was driving in the Town of Brookside on or about June 13, 2020, when she was pulled over for a U-turn by a Brookside Police officer.

96.    She was arrested, and her car was immediately towed away by Jett's Towing.

17

97.     Ms. Todd's car was impounded, and she had to pay in excess of $300.00 to retrieve her vehicle.  This payment operated as a fine because it extracted a payment by Ms. Todd in exchange for her vehicle.  Austin v. United States, 509 U.S. 602, 609-10 (1992).  The seizure, impoundment, and extraction of payment were carried out using the police power of the Town of Brookside.  The Town of Brookside did not file a Civil Asset Forfeiture action pursuant to Ala. Code § 20-2-93, against Ms. Todd.

98.     The combination between the Individual Officer Defendants, the Town of Brookside, and the Municipal Court and its officers, and Jett's Towing, was aimed at extrinsically extorting money from people stopped by the Town of Brookside Police Department.  Jett's Towing, according to the Department of Examiners of Public Accounts, was the only company used to tow vehicles, and it was chosen to perform this task without going through the formal bid process required by Ala. Code § 41-16-50.

99.     There was no contract between the Town of Brookside and Jeff's Towing, as required by law.

100.    More importantly the monies extracted by Jett's Towing were according to the above-referenced Report: (1) not accounted for in a way that would differentiate those fees from other monies paid the Police Department; and (2) were

collected, in many instances, for offenses not listed in the Town's ordinances, which means the Town had no right to collect impound fees at all.

101.   In any case, fees collected as "impound fees" should be reasonably related to the costs of administrating the legal and proper impoundment of vehicles. These fees were not so related, and the impounds, as described herein, were not authorized by law to begin with.

102.   Like Ms. Smith's case, the Town of Brookside used its police power to extract payment from Ms. Todd in order to get her vehicle back.

**G.    Facts Relating to Zackary Harris.**

103.   Zackary Harris was pulled over by a Town of Brookside Police officer in March of 2019.

104.   Mr. Harris was charged fines far in excess of those allowed for traffic offenses under the Alabama Rules of Judicial Administration, on the Schedule of Costs and Fees allowed.

105.   Not only was Mr. Harris charged excessive fines, but his vehicle was towed and impounded by Jett's Towing, for which he had to pay towing costs to retrieve his vehicle as part of the fines imposed by the Town of Brookside.  Mr. Harris was deprived of his vehicle until he could pay the towing and impoundment costs.

**H.    Facts Relating to Angela Crawford**

19

106. Angela Crawford was pulled over for running a stop sign by The Brookside Police Department on May 3, 2021.

107. Ms. Crawford did not run the stop sign.

108. The Brookside Police officers that pulled Ms. Crawford over demanded that she exit her vehicle. There was no probable cause for her to be asked to leave the vehicle. Such a process is a Fourth Amendment violation, and a violation of Alabama's non-custodial arrest statute, Alabama Code §32-1-4 (1975).

109. When Ms. Crawford questioned why she had been so directed, she was told that she failed to appear for an earlier traffic citation.

110. Ms. Crawford had paid the previous traffic citation, and she tried to explain this to the officers. She even tried to show them the electronic receipt for her payment of the earlier citation.

111. The Brookside Police Officers were unmoved and told her that this was not their problem. They called Jett's Towing and had her car towed. Moreover, Ms. Crawford, who had a stroke that limited her mobility, was handcuffed and taken to the Brookside jail at great discomfort.

112. Ms. Crawford never was charged with failing to stop at a stop sign. Ms. Crawford did, however, have to pay $181.12 to the Town of Brookside to obtain a release for her vehicle, and then pay Jett's Towing another $160.00 to get her car back.

113.   The Town of Brookside personnel did, eventually, figure out that Ms. Crawford had paid the previous ticket, and refunded Ms. Crawford's payment, but that did not repair the anxiety she suffered as a result of this incident.

114.   Ms. Crawford's anxiety and embarrassment at the entire situation was made even worse when, despite having her towing charges repaid, and never being charged with a crime, Ms. Crawford's picture was posted on the Town of Brookside's Facebook page as a part of the "Operation Clean Streets" program.

115.   This public shaming led to embarrassment and panic attacks for which Ms. Crawford had to seek medical treatment.

**I.   Facts Relating to Roger Grace**

116.   On October 7, 2021, Roger Grace was pulled over traveling on I-22 westbound, not within 1.5 miles of the corporate limits of the Town of Brookside.

117.   The Brookside Police Officers told Mr. Grace that he was pulled over for improper lane usage.  Mr. Grace, however, was never charged with any traffic violation. He was, however, accused of being impaired by drugs or alcohol.

118.   During Mr. Grace's traffic stop, they asked him to exit the vehicle.  Mr. Grace could not readily exit the vehicle because he is a paraplegic.  Instead, they asked him a series of questions and administered a visual sobriety test.  Mr. Grace was never charged.

**J.   John "J.D." Walker:  February 21, 2021, and October 7, 2021**

119. On February 21, 2021, John "J.D." Walker was pulled over at mile marker 96 on Interstate 22, which is beyond 1.5 miles from the corporate limits of the Town of Brookside.

120. The stated reason Mr. Walker was pulled over was for following too closely.

121. The police officer asked Mr. Walker to step out of the car and then handcuffed Mr. Walker. The police officer told Mr. Walker that he smelled "weed" in the car. Mr. Walker had no marijuana in the car.

122. No marijuana was found in the car, so Mr. Walker was just given a ticket for following too close.

123. Mr. Walker did nothing further on that ticket because he felt he had done nothing wrong.

124. On October 7, 2021, Mr. Walker was riding in the car with Roger Grace, referenced above.

125. Upon Mr. Grace's traffic stop, Mr. Walker was questioned and arrested for failing to appear at the trial date for his "following too close" ticket in February. Mr. Walker was handcuffed and taken to the Brookside Police Station, where he was strip searched by the police officers.

126. Mr. Walker was never charged with any offense other than the failure to appear for the original following too closely.

22

**K. <u>Facts Relating to Daniel Kilgore</u>**

127.   On July 8, 2020, Daniel Kilgore was pulled over on Interstate 22, west of the jurisdictional limits of the Town of Brookside Police Department.

128.   Mr. Kilgore had just bought a new truck and did not have license plates on it.

129.   When asked to produce his license by the Brookside Police Officer, Mr. Kilgore responded that he did not have his license.  At that point, Mr. Kilgore was told to exit the car, when Mr. Kilgore exited the car, he was handcuffed and placed in the back of the police car while the officers ransacked his vehicle. This was a violation of the Fourth Amendment.

130.   Mr. Kilgore was ticketed for driving without a license or insurance. The ticket was for more than is allowed by Rule 20 of the Alabama Rules of Judicial Administration plus costs despite the fact that Mr. Kilgore could readily have called someone to get his vehicle, it was towed to Jett's Towing right from the spot of his traffic stop.

131.   Mr. Kilgore's family members were required to pay $175 to the Town of Brookside in order to get a form so that Jett's Towing would release the vehicle. When they arrived at Jett's, Mr. Kilgore's relatives were required to pay another $160.00 to Jett's Towing to release the vehicle.

**L. <u>Facts Relating to Sean Jones</u>**

132.   In June and July of 2021, Sean Jones was pulled over three times by the Town of Brookside's police officers and charged with driving without insurance.

133.   Mr. Jones did have the required insurance, but he could not show it to the officers because he kept a digital copy on his phone, which was damaged and would not work at the time of his traffic stops.

134.   All of these stops took place on I-22, beyond the police jurisdiction of the Town of Brookside.

135.   Mr. Jones went to court to present proof of insurance several weeks later because he was told that he could present proof of insurance at that point and have his charges dropped.

136.   Mr. Jones is a paraplegic, and when he got to court for the proof of insurance case, he was met outside by police officers, who told him to wait outside until his case was called because of crowding in the courtroom.

137.   While in the parking lot, the Brookside Police Officers saw a glass container containing plastic bags.  The police officers used that as a reason to search Mr. Jones's car.

138.   The police officers found no marijuana in the car, but Mr. Jones did tell them that he had a marijuana pipe in the car, for which he was immediately handcuffed and rolled in his wheelchair right into the jail.

139.   Mr. Jones was left in a Brookside jail cell for over five hours without his wheelchair.  This was significant for Mr. Jones as he had to literally drag himself across the floor and pull himself up by the toilet just to use the bathroom.

140.   Mr. Jones pled guilty to the paraphernalia charge, and has been fined thousands of dollars the same day.

141.   To add insult to injury, Mr. Jones's car was towed to Jett's Towing, and he had to pay the Brookside Municipal Court a fee to get his car released, and then he had to pay Jett's Towing another fee to retrieve his car.

**M. Facts Relating to Darren LeCroy**

142.   On March 31, 2021, Darren LeCroy was in the Dollar General parking lot in Brookside, Alabama.  He was having an argument with his girlfriend, Tiffany Burks.  The argument was only verbal, and neither Mr. LeCroy nor Ms. Burks contend that either laid a hand on the other.

143.   After the argument, both Mr. LeCroy and Ms. Burks left the Dollar General parking lot in their own vehicles.

144.   Mr. LeCroy was pulled over and detained, and eventually charged with Domestic Violence 3rd degree, even though neither party swore out a warrant against the other, or even made a complaint, Mr. LeCroy' s vehicle was towed, and he had to pay a fee to the Town of Brookside to get his car released, and then another fee to Jett's Towing.

## IV.  **CLASS ALLEGATIONS**

145.  Class Definition:  Pursuant to Fed. R.Civ. P. 23(a), (b)(1), (b)(2), and

(b)(3) Plaintiffs bring this action on behalf of themselves and all others situated in

the following subclasses.

All plaintiffs' Due Process Class:

All persons who were pulled over by the Town of Brookside, Alabama
Police Department and charged with any offense, or held beyond the
initial traffic stop. All plaintiffs represent this class.

Subclass A:

All persons who were the subject of a traffic stop by the
Town of Brookside, Alabama Police Department where
that traffic stop occurred more than 1.5 miles outside of
the corporate limits of the Town of Brookside, Alabama.
This class is represented by plaintiffs Blackwell, Donahue,
Thomas, Jackson, Grace, Walker, Kilgore, and Jones.

Subclass B:

All persons who had their automobiles towed and
impounded by Jett's Towing, as the result of a traffic stop
by the Town of Brookside, Alabama.  This class is
represented by plaintiffs Todd, Harris, Crawford, Kilgore,
Jones, and LeCroy.

Subclass C:

All persons who were fined by the Town of Brookside,
Alabama, as the result of a traffic stop by the Town of
Brookside, Alabama, and were fined more than the
combination of the Schedule of Fines for Traffic Offenses
in a municipal court as outlined by Rule 20 of the Alabama
Rules of Judicial Administration, plus costs allowed to be
charged in a municipal court of $172.00 allowed under the

26

various statutes assessing costs for traffic stops in municipal courts.  This Class is represented by plaintiffs Jackson, Keyarah Smith, Harris, and Kilgore.

Subclass D:

All persons who were detained by Town of Brookside, Alabama police officers beyond the initial traffic stop for a traffic violation. Plaintiffs Blackwell, Donahue, Grace, Walker, Kilgore, and Jones represent the class.

146.    Numerosity: The members of each Class or Subclass are so numerous that their individual joinder would be impracticable in that: (a) the Class or Subclass includes at least hundreds of individual members; (b) the precise number of Class or Subclass members and their identities are unknown to Plaintiffs, but are available through public records, and can easily be determined through discovery; (c) it would be impractical and a waste of judicial resources for each of the at least hundreds of individual class or subclass members to be individually represented in separate actions; and (d) it is not economically feasible for those class members to file individual actions.

147.    Commonality/Predominance: Common questions of law and fact predominate over any questions affecting only individual class members. These common legal and factual questions include, but are not limited to, the following:

a.      Whether traffic stops made by police officers of the Town of Brookside, Alabama more than 1.5 miles from the town of Brookside, Alabama, are void for lack of subject matter jurisdiction, and whether all fines and penalties assessed for such traffic stops are

27

due to be returned, and whether the citations are due to be expunged from any state record.

b.       Whether the seizure of property subject to police stops beyond the jurisdictional limits of the Town of Brookside Police Department are illegal under the Fourth Amendment.

c.       Whether the imposition of towing fines by the Town of Brookside, Alabama in the form of fees to be paid to Jett's Towing violates substantive due process – where Jett's Towing was called to the scene pursuant to only a traffic stop.

d.       Whether the imposition of fines to retrieve vehicles from Jett's impound lot when Jett's towing was called pursuant to a traffic stop by the Town of Brookside, Alabama constitutes an excessive fine under the Eighth Amendment to the United States Constitution.

e.       Whether the Town of Brookside and Jett's Towing conspired under 42 U.S.C. § 1983 to violate Plaintiffs' substantive due process and Eighth Amendment rights.

f.       Whether fines levied by the Town of Brookside, Alabama in its Municipal Court greater than the combination of the Schedule of Fines for Traffic Offenses as outlined by Rule 20 of the Alabama Rules of Judicial Administration, plus costs allowable in municipal court of $172.00, are excessive under the Eighth Amendment to the United States Constitution.

g.       Whether detention pursuant to a traffic stop by the Town of Brookside, Alabama is a violation of the Fourteenth Amendment's right to be free from unreasonable searches and seizures; guarantee of substantive due process.

      h.     Whether the Town of Brookside and Jett's Towing constituted an enterprise under RICO.

      i.      Whether the calling of Jett's Towing to the scene of accidents and/or traffic stops, and then charging people money to retrieve impounded cars constitutes a predicate act under RICO and the Hobbs Act.

148. <u>Typicality</u>:  Plaintiffs claims are typical of the claims of the Class or Subclass members.  Plaintiffs and all class and subclass members have been injured by the same wrongful practices.  Plaintiffs' claims arise out of the same practices and course of conduct that give rise to the claims of the subclass and are based on the same legal theories for the class.

149. <u>Adequacy</u>:  Plaintiffs will fully and adequately assert and protect the interests of the Class and Subclasses.  Plaintiffs have counsel experienced in class actions and complex mass tort litigation.  Neither Plaintiffs nor counsel have interests contrary to or conflicting with the interests of the Class or Subclasses.

150. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class or Subclass members is economically unfeasible and impractical. While the aggregate amount of the damages suffered by the class is large, the individual damage suffered by each, in many cases is too small to warrant

the expense of individual lawsuits.  The court system would be unreasonably burdened by the number of cases that would be filed if a class action if not certified.

151.   Plaintiffs do not anticipate any difficulties in the management of this litigation.

152.   Defendants have acted on grounds generally noticeable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole proper.

## COUNT I

**(Class Claim Against the Town of Brookside and the Individual Officer Defendants Pursuant to 42 U.S.C. § 1983 to Conspiracy to violate Fourteenth Amendment Due Process Rights to an Impartial Tribunal)**

153.  Plaintiffs incorporate by reference, as it set forth fully herein, paragraphs 1-152 above.

154.   This claim is for a conspiracy to violate Constitutional rights of the plaintiffs pursuant to 42 U.S.C. § 1983. This claim is brought by all plaintiffs.

155.   As stated above, the Individual Officer Defendants and the Town, Brookside, together, have created a system of law enforcement through excessive fines and fees, in conjunction with the municipal court, and the municipal court prosecutor, where each party has a financial incentive in each case brought or prosecuted; and in each traffic stop made.

156.   Defendants have created a system where a traffic stop is not an exercise in law enforcement and police professional judgment, but an opportunity to create revenue that will flow back into their pockets.

157.   The police department makes arrests knowing that the municipal prosecutor will assess the unreasonable and unlawful fines and fees stated herein. The municipal court will enter order for those excessive fines and fees far in excess of those reasonable or constitutionally allowable. In turn, those monies will flow, appropriated by the Town of Brookside City Council, to a bloated police budget, which includes both direct payment to police officers in the form of salaries, also indirect benefits such as unnecessary and expensive equipment and vehicles for the police department.

158.   In addition, the funds created by the illegal and unconstitutional fines and fees flows directly to the municipal court prosecutor and the municipal court judge, who have seen their salaries skyrocket since 2018. Each defendant in the conspiracy has a clear financial stake in the traffic stops, charges, and cases prosecuted.

159.   This financial interest is the result of the system of law enforcement that incentivizes maximum revenue generation from policing.

160.   This system violates the substantive due process clause of the Fourteenth Amendment. Plaintiffs are entitled to a law system free of bias and not designed to maximize revenue.

161.   This system has distorted the interest of each participant in it, and would not be possible without the agreement and cooperation of each party to it.

**WHEREFORE,** all plaintiffs seek the following:

a. An order of this Court certifying the Due Process Clause and appointing each plaintiff as class representatives and undersigned as Class Counsel.

b. An order in Plaintiffs' favor on the Conspiracy Count, and a declaration that all fines or payments made as a result of this system are a nullity because they resulted from and unconstitutionally partial system.

c. An order that all convicts, or guilty pleas of the case be set aside as unconstitutional under the Fourteenth Amendment.

d. An order of the Court directing the return of all property seized pursuant to any order or action by the Town of Brookside Municipal Court or the Police Department.

e. Damages in the amount of fines and fees paid by the Plaintiff Class as well as an award of general damages for mental anguish.

f. An order directing Defendants to pay the costs of this action and a reasonable attorney's fee pursuant to 42 U.S.C. §1983 (b).

## COUNT II

**(Class Claim Pursuant to 42 U.S.C. §1983 for Conspiracy Between The Town of Brookside, the Individual Officer, Defendants, and Jett's Towing to violate**

**Plaintiff's Fourteenth Amendment Substantive Due Process Right to and Unbiased Prosecution and Tribunal)**

162.    Plaintiffs incorporate by reference, as it set forth fully herein, paragraph 1- 161 above.

163.    This claim is made for conspiracy to violate the Fourteenth Amendment rights of Plaintiffs in Subclass B, represented by plaintiffs Todd, Harris, Crawford, Kilgore, Jones, and LeCroy.

164.    The due process clause of the Fourteenth Amendment requires that law enforcement, as executed by police officers, the municipal prosecutor, and the municipal court judge; be neutral, impartial, objective, and free from even the perception that the parties operating the system of justice are influenced by their own financial interests.

165.    Seizing, towing, and impounding vehicles is a formidable exercise of law enforcement power.

166.    As explained above, each defendant has a substantial financial interest in the seizure, towing, and impoundment of vehicles. All defendants have been overwhelmingly dependent upon extracting towing and impound fees from Plaintiffs and the Plaintiff Class.

167.    Jett's Towing is and was a knowing participant and beneficiary of the revenue generating scheme. Jett's profited greatly from the explosion of fees generated from the illegal and unconstitutional tows referenced above. Of course,

those fees would not have been generated if Jett's Towing did not tow the vehicles to begin with. Jett's Towing certainly was aware of the growth of cars towed and impounded from 50 in 2018 to 789 in 2020. The company stood at the ready to tow vehicles and would not release them until all fees were paid.

168.   Because the system, practices, policies, and customs developed in implementing the system has created an incentive to tow to maximize revenue as opposed to any legitimate law enforcement purpose; the tows, and the fees generated, violate the Fourteenth Amendment guarantees of substantive due process.

169.   As a direct and proximate result of the actions of Defendants, includes Jett's Towing, Plaintiffs and the Plaintiff Class have suffered damages in having to pay towing fees and fines to secure the release of their vehicles.

**WHEREFORE,** Plaintiff in Subclass B demand the following:

a. An Order of this Court certifying this Court as a class action appointing plaintiffs Todd, Harris, Crawford, Kilgore, Jones, and LeCroy as Class Representatives and undersigned as Class Counsel.
b. An order directing the return of all vehicles seized by the Town of Brookside and towed by Jett's Towing.
c. Damages in an amount to be determined by struck jury for:
    i.   Fines paid,
    ii.  Loss of use of the vehicles; and
    iii. Mental anguish damages.
d. An order directing Defendants jointly and severally to pay the costs of this action, and a reasonable attorneys' fees pursuant to 42 U.S.C. §1983 (b).

## COUNT III

**(Class Claim Against the Town of Brookside That All
Traffic Citations Outside the Police Jurisdiction of the Town of
Brookside are Invalid Because the Municipal Court Lacked Subject Matter
Jurisdiction and Violates The Fourth Amendment's Prohibition Against
Unreasonable Searches and Seizures)**

170.   Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1-169 above.

171.   This is a Class Claim on behalf of Subclass A, represented by Plaintiffs Blackwell, Donahue, Thomas, Jackson, Grace, Walker, Kilgore, and Jones, against the Town of Brookside.

172.   This claim is brought pursuant to 42 U.S.C. § 1983 to vindicate Plaintiffs' constitutional rights, and under state law as described herein.

173.   Pursuant to Ala. Code. § 11-40-10(1975), the territorial limits of the Town of Brookside's police power, and the subject matter jurisdiction of its municipal court, extends to 1.5 miles beyond the corporate borders of the Town of Brookside.  Ala. Code § 11-40-10; Ala. Code § 12-14-1(b).

174.   Plaintiffs in Subclass A were all arrested outside of the jurisdictional limits of the Town of Brookside.

175.   If there is an absence of jurisdiction over either the person or subject matter, a court has no power to act.  The lack of subject matter jurisdiction cannot be waived.  Ex Parte U.S., 918 So.2d 908 (Ala. 2005).

176.  Because the Town of Brookside had no subject matter/police jurisdiction to stop any of the people in Subclass A.  Any Order of the Court, or any fine, or any impoundment of a vehicle is void, and a nullity subject to disgorgement because the Town of Brookside cannot in equity and good conscience retain monies it unlawfully gained.

177.  Plaintiffs have been damaged under this Count in the amount of monies they paid in fines, and for property confiscation due to unconstitutional traffic stops beyond the police jurisdiction of the Town of Brookside.

178.  Not only were the arrests, forfeitures, and fines void under Alabama law, but they are actionable under 42 U.S.C. § 1983 because they deprived Plaintiffs of their Fourteenth Amendment substantive due process rights.

179.  The out-of-jurisdiction arrests, seizures, and fines: (1) deprived Plaintiffs of their constitutionally protected liberty and property interests; (2) were performed by a governmental entity; and (3) were pretextual, arbitrary and capricious, and without any rational basis because they were outside the police jurisdiction of the governmental entity.  Spence v. Zimmerman, 873 F.2d 256, 258. (11th Cir. 1989).

180.  In addition to violating the Fourteenth Amendment's due process guarantee, the extrajudicial traffic stops violate(d) the Fourth Amendment and Alabama law, which prohibits unreasonable searches and seizures.  The detainer of

persons and any seizure of property by the Town of Brookside Police Department were objectively unreasonable as any officer would know he or she had no right to make such an extra-jurisdictional arrest or seizure.

181.   The extra-jurisdictional stops were in violation of clearly established law, and thus could not have been the performance of any legitimate job-related function of an officer.

**WHEREFORE,** Plaintiffs in Subclass A demand the following against the Town of Brookside:

a.   An Order of this Court certifying this claim and Subclass as a class action; appointing plaintiffs Blackwell, Donahue, Thomas, Jackson, Grace, Walker, Kilgore, and Jones as Class Representatives; and undersigned as Class Counsel.

b.   An Order of this Court declaring all fines, forfeitures, convictions or other orders of the Municipal Court of Brookside, Alabama void as a matter of law, where the arrests were made over 1.5 miles from the corporate limits of the Town of Brookside.

c.   An Order of this Court that the out-of-jurisdiction arrests, seizures, and fines were violations of the Fourteenth Amendment's guarantee of substantive due process.

d.   The return of all property seized pursuant to illegal orders of the Municipal Court of the Town of Brookside, Alabama due to lack of subject matter jurisdiction.

e.  The disgorgement of all fines collected by the Town of Brookside, Alabama, pursuant to arrests made over 1.5 miles from its corporate limits.

f.  Damages for the fines, forfeitures, and arrests, including mental anguish damages.

g.  An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT IV

**(Class Claim for Conspiracy Between the Town of Brookside Municipal Court and the Police Officer Defendants Pursuant to 42. U.S.C § 1983 for Conspiring to Violate Plaintiffs' Substantive Due Process and Fourth Amendment Rights Through Extra-Jurisdictional Traffic Stops)**

182.  Plaintiffs incorporate by reference, as if set forth fully herein, paragraphs 1-181.

183.  This claim is made for a conspiracy to violate the constitutional rights of Plaintiffs pursuant to 42 U.S.C. § 1983.  This claim is brought by Subclass A, represented by Plaintiffs Blackwell, Donahue, Thomas, Grace, Walker, Kilgore, and Jones.

184.  As stated above in Count I, the substantive due process rights of Plaintiffs were violated because: (1) they were deprived of their constitutionally protected liberty and property interests; (2) the traffic stops beyond the 1.5 mile police jurisdiction were performed by a governmental entity, *i.e*., the police department through the Individual Officer Defendants; and (3) they were pretextual

arbitrary, and without any rational basis because they were outside the 1.5 mile police jurisdiction of the Town of Brookside.

185.   The Individual Officer Defendants and the Municipal Court, through its rubber stamping of fines it knows to be extrajudicial, reached an understanding that the Individual Officer Defendants wrote offenses knowing that the unconstitutional and unenforceable fines, and the Municipal Court would enforce them and collect the fines.  The scheme would not work unless both the Individual Officer Defendants and the Municipal Court system worked in tandem to make the extra-jurisdictional traffic stops and charges; and then for the Municipal Court to collect the ill-gotten gains from the fines.  Further, the scheme would not work unless each member of the conspiracy acted in concert.  They all acted together knowing that if one refused, the whole conspiracy could come to a halt.

186.   Not only were the traffic stops beyond the police jurisdiction of the Town of Brookside, but monies paid for fines and/or bonds, were not separately accounted for, making them subject to winding up in the bloated police budget, or even worse, just taken by employees of the police department.

187.   After the collection of improper fines and costs, the Municipal Court would distribute the money back to the Town of Brookside, which would in turn fund a bloated police department, and provide that department with funds and

equipment that would benefit the Individual Officer Defendants through salaries and equipment.

188.   The conspiracy stemmed from the unconstitutional deprivation of liberty and property interests suffered by those arrested by the Town of Brookside Police Department outside of its jurisdictional limits.

189.   The Individual Officer Defendants are not entitled to immunity in this case because their conduct in making traffic stops beyond the judicial boundaries of the Town of Brookside violates clearly established statutory authority, i.e., Ala. Code § 11-40-10 and 12-14-1(b), setting the limits of police jurisdiction.  Moreover, those stops are a clear deprivation of the 14th Amendment Substantive due process rights of Plaintiffs as set forth above because they were without any rational basis. They were clearly outside of the police jurisdiction of the officers making them, which any reasonable person would have known.

190. In addition, as stated above, the extra-jurisdictional traffic stops, detention, and seizure of any property is a violation of the Fourth Amendment.

**WHEREFORE**, Plaintiffs in Subclass A demand the following against the Individual Officer Defendants as follows:

> a.   An Order of this Court certifying this Subclass as a Claim and Subclass as a class action; appointing plaintiffs Blackwell, Donahue, Thomas, Jackson, Grace, Wallace, Kilgore, and Jones as Class Representatives; and undersigned as Class Counsel.

b.    An Order of this Court in Plaintiffs' favor on the Conspiracy Count, and a declaration that all fines, forfeitures, convictions or other orders of the Town of Brookside Municipal Courts are void where the arrests were made at locations over 1.5 miles from the corporate limits of the Town of Brookside.

c.    An Order of this Court that the out-of-jurisdiction arrests, seizures, and fines were a violation of Plaintiffs' Fourteenth Amendment guarantee of substantive due process.

d.    An Order of the Court directing the return of all property seized pursuant to illegal orders of the Town of Brookside Municipal Court due to lack of subject matter jurisdiction.

e.    Damages against the Individual Officer Defendants for this wrongful fines, forfeitures, and arrests, including mental anguish damages.

f.    An Order of the Court directing Defendants, jointly and severally, to pay a reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT V

**(Class Claim Against the Town of Brookside, The Individual Officer Defendants and Jett's Towing Pursuant to 42 U.S.C. § 1983 for Conspiring to Violate Plaintiffs' Fourth, Fifth, Fourteenth, and Eighth Amendment Rights)**

191.  Plaintiffs incorporate by reference, at if fully set forth herein, paragraphs 1-190 above.

192.  The claim is brought to vindicate Plaintiffs' Fourth, Fifth, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.  This Claim is also

41

brought for the conspiracy entered into by the Town of Brookside, the Individual Officer Defendants, and Jett's Towing to violate Plaintiffs' Constitutional rights.

193. This claim is on behalf of Subclass B, represented by Plaintiffs Todd, Harris, Crawford, Kilgore, Jones, and LeCroy.

194. The Town of Brookside, through its Police Department, and the Individual Officer Defendants, had an agreement with Jett's Towing whereby it would call Jett's Towing on routine traffic stops without pursuing an action under Alabama's Civil Forfeiture Act, Ala. Code § 20-2-93. The Individual Officer Defendants knew of this agreement because they were the ones who made the calls.

195. The agreement described above was for illegal purposes. These illegal purposes were fourfold: (1) To violate Plaintiffs' Fourth Amendment rights to be secure in their property through unreasonable seizures of their vehicles; (2) to deprive Plaintiffs of their property without just compensation in violation of the Fifth Amendment; (3) to violate Plaintiffs' Fourteenth Amendment substantive due process rights by depriving Plaintiffs' Constitutionally protected rights in property in a way that was not rationally related to any governmental interest, i.e., the Town of Brookside has no legitimate governmental interest in seizing Plaintiffs' vehicle for a routine traffic violation; and (4) to violate Plaintiffs' Eighth Amendment rights to be free from excessive fines when Plaintiffs were forced to pay impoundment

penalties to retrieve their vehicles bearing no proportionality to the underlying traffic offense and the penalties therefore.

196.   All parties agreed that Jett's Towing would be called on routine traffic stops, and vehicles towed by Jett's Towing.

197.   The arrangement with Jett's Towing was not only for the purpose of extracting monies unconstitutionally, as stated below because the impoundment of vehicles was not related to the purpose of the stops, i.e., traffic violations, and was excessive as disproportional to the fines for the actual offense charged, but Jett's Towing should not have been doing the towing in the first place.

198.   First, in opposition to the requirement contained at Ala. Code § 41-16—50, Jett's Towing never submitted a bid to perform the towing work for the Town of Brookside.

199.   Second, the impound fees were not accounted for in the books and records of the Town and/or its Police Department, so as a result, the exact amount in impound fees collected is not available.

200.   Third, according to the Department of Examiners of Public Accounts, a large percentage of impound payments discovered on paper records were for violations not listed in the Town's ordinances, meaning that the Town had no authority to even make the arrests, much less collect impound fees not related to the offense.

201.   The Fourth Amendment does not tolerate seizures of vehicles unrelated to the purpose of the stop, i.e., a traffic violation.

202.   The above-described scheme benefitted all of the parties to the conspiracy.  It created revenue for Jett's and the Town of Brookside such that those revenues would benefit the Town of Brookside and the Individual Officer Defendants through funding the bloated police department, its salaries, and its unnecessary equipment.  This was all made easier because the impound fees were not properly accounted for.

203.   As to the Individual Officer Defendants, they do not enjoy immunity for these actions because a reasonable person would have known that the seizing of vehicles pursuant to routine traffic stops, without any further process and without filing a Civil Asset Forfeiture Action pursuant to Ala. Code § 20-2-93, is an unreasonable seizure of property under the Fourth Amendment; a taking of property without just compensation prohibited by the Fifth Amendment; violation of the Fourteenth Amendment substantive due process rights because such seizures are not related to any legitimate governmental interests; and a violation of the Eighth Amendment rights to be free from excessive fines because the payment of impound fees resulting from the seizure is disproportionate to the "crimes" alleged.

**WHEREFORE**, Plaintiffs demand the following:

  a.   An Order of this Court certifying this Count as a class action; appointing Plaintiff's Todd, Harris,

Crawford, Kilgore, Jones, and LeCroy as Class
Representatives and undersigned as Class Counsel.

b.    An Order of this Court directing the return of any
vehicles seized by the Town of Brookside and
towed by Jett's Towing, Inc.

c.    Damages in an amount to be determined by struck
jury for: (i) fines paid; (ii) loss of the use of
Plaintiffs' vehicles; and (iii) mental anguish
damages caused by actions of Defendants.

d.    An Order of this Court directing Defendants jointly
and severally to pay reasonable attorneys' fees and
costs pursuant to 42 U.S.C. § 1988(b).

## COUNT VI

**(Class Claim for Excessive Fines Charged and
Collected by the Town of Brookside, Alabama)**

204.   Plaintiffs incorporate by reference, as if set forth fully herein,
paragraphs 1-203 above.

205.   This claim is brought pursuant to 42 U.S.C. § 1983 to vindicate
Plaintiffs' Eighth Amendment rights.

206.   This claim is made by Subclass C, represented by Plaintiffs Jackson;
Keyarah Smith; Harris; and Kilgore.

207.   Plaintiffs have all been subject to fines in excess of those allowed under
Alabama law.

208.   Ala. R. Jud. Admin. 20(A), authorized by Ala. Code § 12-12-55, sets forth a schedule of fines to be charged where a defendant elects to plead guilty to a traffic offense.

209.   In addition, municipalities may charge costs associated with a guilty plea in a municipal court.  Those costs are $172.00.

210.   Each Plaintiff was charged, and paid, fines in excess of those allowed by Ala. R. Jud. Amin. 20(A), and the $172.00 in allowable costs.

211.   By definition, the collection of such costs is excessive under the Eighth Amendment of the United States Constitution and Alabama law.  The State of Alabama has defined what is a proportionate fine.  Each Plaintiff has been fined in excess of the State mandated proportionate amount.

212.   The collection of monies in excess of those allowed by law was made easier to conceal because there were no written policies or procedures for the receipt and collection of funds from traffic stops or fines paid, either at the Town level, or at the Police Department level, or even at the Municipal Court level, creating a system where money could be, and was used in assessing fines and fees, special "bonuses" that were neither processed through the Town payroll or taxed.  Some payments were even made to Police Department personnel based upon verbal attestations of hours worked, with no further backup.

**WHEREFORE**, Plaintiffs demand the following:

a.    An Order of this Court certifying this claim as a class action; appointing Plaintiffs Jackson' Keyarah Smith; Gerald Smith; Todd; Harris; and Kilgore as Class Representatives; and undersigned as Class Counsel.

b.    Damages in an amount to be determined by struck jury for amounts paid in excess of the amounts allowed under Alabama statutory law, as stated above.

c.    An Order of this Court directing disgorgement of all amounts collected by the Town of Brookside in excess of that allowed by law, as described above.

d.    Damages for mental anguish.

e.    An Order of this Court directing Defendants, jointly and severally, to pay the costs associated with this action, plus a reasonable attorneys' fee pursuant to 42 U.S.C. § 1988(b).

## COUNT VII

**(Class Claim for Conspiracy Between the Individual Officer Defendants and the Town of Brookside Municipal Court To Charge Excessive Fines Prohibited by the Eighth Amendment Against the Individual Officer Defendants)**

213.   Plaintiffs incorporate by reference, as if set forth fully herein, paragraphs 1-212 above.

214.   The claim is made by Subclass C, represented by Plaintiffs Jackson, Keyarah Smith, Harris, and Kilgore.

215.   This Claim is brought pursuant to 42 U.S.C. § 1983 for a conspiracy between the Individual Officer Defendants and the Town of Brookside Municipal Court to charge excessive fines prohibited by the Eighth Amendment.

216.   Subclass C, Plaintiffs were all charged fines in excess of those allowed by Alabama law.  Plaintiffs hereby incorporate paragraphs 1-139 above, outlining the substantive Eighth Amendment violation.

217.   The Individual Officer Defendants and the Municipal Court, through its knowing rubber stamping of fines, reached an understanding that the Individual Officer Defendants would write tickets for offenses where they knew excessive fines would be paid, and the Municipal Court would enforce and collect the fines.  The scheme would not work without both the Individual Officer Defendants and the Municipal Court system worked in tandem to charge the excessive fines, and then for the Municipal Court to collect the ill-gotten gains.

218.   After the Subclass C Plaintiffs paid the excessive fines, the Municipal Court would then distribute the money from the excessive fines back to the Town of Brookside, which would in turn fund a bloated police department, and provide that police department with funds and equipment that would benefit the Individual Officer Defendants through salaries and equipment.

219.   The conspiracy alleged in this Court all stemmed from the unconstitutional collection of excessive fines.

48

220.   The Individual Officer Defendants are not entitled to immunity because their conduct in levying fines clearly in excess of those allowed by Alabama law not only violates Alabama law, which any reasonable person would know, but any reasonable person would have known such fines are, by definition, excessive under the Eighth Amendment.

**WHEREFORE**, Plaintiffs demand judgment against the Individual Officer Defendants as follows:

a.   An Order of this Court certifying this Subclass and claim as a class action; appointing plaintiffs Jackson, Keyarah Smith, Harris, and Kilgore as class representatives; and undersigned as Class Counsel.

b.   An Order of this Count in Plaintiffs' favor on the conspiracy count, and a declaration that all fines collected in excess of those allowed by Alabama law are excessive under the Eighth Amendment.

c.   Damages against the Individual Officer Defendants for the excessive fines, and for mental anguish for having to pay the excessive fines.

d.   An Order of this Court directing Defendants, jointly and severally, to pay a reasonable attorneys' fee and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT VIII

**(Class Claim Under the Racketeering Influenced a
Corrupt Organization Act Against the Individual Officer Defendants)**

221.   Plaintiffs incorporate by reference, as if set forth fully herein, paragraphs 1-220 above.

221.   This claim is brought by Subclasses A, B, and C, and is represented by Plaintiffs Thomas, Jackson, Todd, Harris, Keyarah Smith, Gerald Smith, Grace, Walker, Kilgore, Jones, Crawford, and LeCroy.

222.   This claim is brought pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO") against the Individual Officer Defendants.

223.   RICO, at 18 U.S.C. § 1964(c) provides a private cause of action to "any person injured in his business or property by reason of a violation of § 1962 of this chapter."

224.   Section 1962(c) prohibits an individual from "participating in the conduct of the affairs of an enterprise engaged in interstate commerce, through a pattern of racketeering activity." Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017).[2]

225.   A RICO enterprise is very broadly defined as, "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(5).

_____

[2] Municipal entities may be part of a RICO enterprises. United States v. Cianci, 378 F.2d 71, 82-82 (1st Cir. 2004).

226.   There is no question that the RICO enterprise described above is involved in interstate commerce as the Town of Brookside Police Department routinely patrols Interstate 22 and makes traffic stops thereon.  Two of the plaintiffs in this case even are from outside of Alabama.  Interstate 22 is a regularly travelled interstate highway permitting the flow of interstate commerce.

227.   The purpose of the association in fact between the Individual Officer Defendants, the Town of Brookside, and the Town of Brookside Police Department. and the Municipal Court and the Municipal Court's officers is to extract the payment of unlawful fines from the people, including Plaintiffs, subject to traffic stops.

228.   The Town of Brookside participates in the affairs through "a pattern of racketeering activity."  18 U.S.C. § 1962(a).  The activity that the Individual Officer Defendants participated in is extortion under the Hobbs Act, 18 U.S.C. § 1951(b)(2).

229.   The Hobbs Act makes it illegal to, "obstruct, delay, or affect interstate commerce or the movement of any article in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose . . ."  18 U.S.C. § 1951(a).

230.   The Hobbs Act further defines extortion as, "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).

231.   The Individual Officer Defendants, using the municipal Town of Brookside, its Police Department, and the municipal courts as an artifice, and the enterprises,  forced Plaintiffs and the Plaintiff classes to give up their property and pay illegal fines through fear, intimidation, and under color of official right by imposing fines not authorized by law, seizing property without the legal right to do so, as plead above, and by threat of jail time unless illegal fines were paid or property unlawfully forfeited.  This is extortion, as prohibited by 18 U.S.C. § 1951.

232.   Extortion under 18 U.S.C. § 1951, is one of the predicate acts enumerated under RICO at 18 U.S.C. § 1961 that can create liability as "racketeering activity."

233.   The Individual Officer Defendants engaged in a "pattern of racketeering activity" which is established by just two acts of racketeering activity in the last ten (10) years.  Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013)).  More than two acts of extortion in the last ten years have been perpetrated on just the Plaintiffs in this case, but the same pattern of racketeering activity has occurred dozens, or hundreds, of times within the last ten (10) years.

234.   Plaintiffs have been injured in their business or property in that they have had to pay illegal fines and have had property wrongfully seized.

**WHEREFORE**, Plaintiffs and the Plaintiff Class demand the following:

a.      Judgment pursuant to 18 U.S.C. § 1964(c) in their
        favor and against the Town of Brookside, Alabama.

b.     Damages in an amount to be determined by struck jury.

c.     Treble damages pursuant to 18 U.S.C. § 1964(c).

d.     A reasonable attorneys' fee and the costs of this action pursuant to 18 U.S.C. § 1964(c).

## COUNT IX

### (Class Claim Under the Racketeering Influenced A Corrupt Organization Act Against the Individual Officer Defendants and Jett's Towing)

235.  Plaintiffs incorporate by reference, as if set forth fully herein, paragraphs 1-234 above.

236.  This claim is brought by Subclass B and is represented by Plaintiffs Todd and Harris.

237.  This claim is brought pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO").

238.  RICO, at 18 U.S.C. § 1964(c) provides a private cause of action to "any person injured in his business or property by reason of a violation of § 1962 of this chapter."

239.  Section 1962(c) prohibits an individual from "participating in the conduct of the affairs of an enterprise engaged in interstate commerce, through a

pattern of racketeering activity."[3]  Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017).

240.  A RICO enterprise is very broadly defined as, "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(5). The Town of Brookside's association in fact with Jett's Towing constitutes a RICO enterprise.

241.  The association-in-fact operative in this Count as a RICO "enterprise" is that of the Individual Officer Defendants; the Town of Brookside Municipal Court; and Jett's Towing, the structure of the municipal institutions allows the Individual Officer Defendants and Jett's Towing to commit the pattern of racketeering activity described below.  The structures of the municipal institutions (Town, Police Department, and Municipal Court are ongoing and organized, and without their use, the Individual Officer Defendants could not carry on the pattern of racketeering activity explained below.

242.  The Individual Officer Defendants, acting in concert with Jett's Towing, have exploited the Town of Brookside, its Police Department, and the Town of Brookside Municipal Court for their own purposes.  They have utilized the

___

[3] Municipal entities may be part of a RICO enterprise.  United States v. Cianci, 378 F.3d 71, 82-83 (1st Cir. 2004).

governmental institutions to carry on the pattern of racketeering described herein. Indeed, it would be impossible for the Individual Officer Defendants to carry out the racketeering activities without the use of the municipal entities.

243.   There is no question that the RICO enterprise described above is involved in interstate commerce as the Town of Brookside Police Department routinely patrols Interstate 22, and makes traffic stops along said Interstate Highway.

244.   The purpose of the association in fact between the Individual Officer Defendants, the Town of Brookside Police Department, and its municipal court, and Jett's Towing is to extract the payment of unlawful fines, impoundment, and towing from the people subject to traffic stops.

245.   The Individual Officer Defendants and Jett's Towing participated in the affairs through "a pattern of racketeering activity."   18 U.S.C. § 1962(a).   The activity the Town of Brookside participates in is extortion under the Hobbs Act, 18 U.S.C. § 1951(b)(2).

246.   The Hobbs Act makes it illegal to "obstruct, delay, or affect interstate commerce or the movement of any article in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of as plan or purpose . . ." 18 U.S.C. § 1951(a).

247.   The Hobbs Act further defines extortion as, "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).

248.   The Individual Officer Defendants, using the municipal entities, in combination and agreement with Jett's Towing, forced Plaintiffs and the Plaintiff Classes to give up their property and/or pay illegal impoundment and towing fees through fear, intimidation, and under color of official right by seizing property without the legal right to do so, and the imposition of illegal towing and impoundment fees to retrieve the vehicles.  This is extortion, as prohibited by 18 U.S.C. § 1951.

249.  Extortion under 18 U.S.C. § 1951, is one of the predicate acts enumerated under RICO at 18 U.S.C. § 1961 that can create liability as "racketeering activity."

250.   The Individual Officer Defendants in combination with the municipal entities, and Jett's Towing engaged in a "pattern of racketeering activity" which is established by just two acts of racketeering activity in the last ten (10) years. Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013).  More than two acts of extortion in the last ten years have been perpetrated on just the Plaintiffs in this case, but the same pattern of racketeering activity has occurred dozens, or hundreds, of times within the last ten (10) years.

251.   Plaintiffs have been injured in their business or property in that they have had to pay illegal fines and have had property wrongfully seized.

**WHEREFORE**, Plaintiffs and the Plaintiff Class demand the following:

      a.     An Order of this Court certifying this Subclass as a class action; appointing Plaintiffs Thomas, Jackson, Todd, Harris, Keyarah Smith, Gerald Smith, Grace, Walker, Kilgore, Jones, Crawford, and LeCroy as Class Representatives, and undersigned as Class Counsel.

      b.     Judgment under 18 U.S.C. § 1964(c) in their favor and against the Town of Brookside, Alabama and Jett's Towing.

      b.     Damages in an amount to be determined by struck jury.

      c.     Treble damages pursuant to 18 U.S.C. § 1964(c).

      d.     A reasonable attorneys' fee and the costs of this action pursuant to 18 U.S.C. § 1964(c).

## COUNT X

### (Class Claim For Violation of Substantive Due Process Rights By Interfering With Liberty Interests of Plaintiffs)

252.   Plaintiffs incorporate by reference, as if set forth fully herein, paragraphs 1-251 above.

253.   This claim is on behalf of Subclass D, and is represented by Plaintiffs Blackwell, Donahue, Grace, Walker, Kilgore, and Jones.

254.   This claim is brought pursuant to 42 U.S.C. § 1983 to vindicate Plaintiffs' Fourteenth Amendment rights to substantive due process.

255.   Plaintiffs were detained by the Town of Brookside Police officers outside of the police jurisdiction of the Town of Brookside.

256.   As stated above, such actions are unlawful, and outside the scope of any legal authority.

257.   Not only were Plaintiffs detained, but some were taken to the Town of Brookside's jail for several hours.

258.   The wrongful detention and jailing are a violation of Plaintiffs' Fourteenth Amendment substantive due process rights.  In order to make out a substantive due process claim, a plaintiff must show: (1) constitutionally protected liberty or property interest; (2) governmental deprivation of that interest; and (3) the governmental action was "pretextual, arbitrary and capricious, and . . . without any rational basis." Spence v. Zimmerman, 873 F.2d 256, 258 (11th Cir. 1989).

259.   Plaintiffs were deprived of their constitutionally protected liberty interest when they were detained and taken to the police station by the Town of Brookside Police Department.

260.   The Town of Brookside is a governmental entity.

261.   The Town or Brookside Police Department traffic stop of Plaintiffs was arbitrary and capricious and without any rational basis as it occurred outside of the

police jurisdiction of the Town of Brookside.  The Town of Brookside had no rational basis to stop Plaintiffs.

262.   Plaintiffs were damaged by the loss of their liberty interest and the fear and anguish of an illegal jailing.

**WHEREFORE**, Plaintiffs demand the following:

    a.    An Order of the Court certifying this claim as a class action; appointing of Plaintiffs Blackwell, Donahue, Grace, Walker, Kilgore, and Jones as Class Representatives; and appointing undersigned as Class Counsel.

    b.    An award of compensatory and punitive damages for illegal detention and jailing.

    c.    An Order of this Court directing Defendants, jointly and severally, to pay a reasonable attorneys' fee and the costs of this action pursuant to 42. U.S.C. § 1988(b).

## COUNT XI

### (Conversion Claims for Thomas and Blackwell)

263.   Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1-262 above.

264.   Following Mr. Thomas' arrest on December 19, 2020, the Town of Brookside impounded Mr. Thomas' Ducati motorcycle.

265.   Even after Mr. Thomas was released from custody by Brookside, the Town refused to release Mr. Thomas' motorcycle to him.  In fact, Mr. Thomas was

advised he would never see his property again.

266.   Brookside continued to retain Mr. Thomas' property against his wishes and refused to release the motorcycle.

267.   Not only does this constitute the common law tort of conversion, but a cause of action has been codified under Ala. Code § 6-5-260, which states that, "Any unlawful deprivation of or interference with such possession [of personal property] is a tort for which an action lies."

268.   The Town of Brookside is a municipal corporation subject to suit under Alabama law.

269.   Moreover, when Mr. Thomas' insurer sought to inspect the motorcycle to adjust his claim, the Town refused to allow it to inspect, thus resulting in the denial of coverage.

270.   Rather than release the motorcycle to Mr. Thomas, the Town wrongfully released the motorcycle to the lienholder without Mr. Thomas' consent.

271.   Brookside's actions in taking and detaining Mr. Thomas' motorcycle constituted an illegal assumption of ownership and illegal exercise of dominion over Mr. Thomas' property in exclusion or defiance of Mr. Thomas' rights when Mr. Thomas had an immediate right to possession of the motorcycle following his release from custody.  Such actions constitute the common law tort of conversion.

272.   Brookside's conversion of Mr. Thomas' property proximately caused

damages to Mr. Thomas.

273.   Brookside's actions with respect to Mr. Thomas' motorcycle are in keeping with the Town's pattern and practice of wrongfully taking, retaining and otherwise exercising dominion over the property of those individuals it searches during traffic stops and/or arrests.

Moreover, with no authority, the Town of Brookside took Mr. Blackwell's knife.

**WHEREFORE**, Plaintiffs respectfully request, on behalf of themselves and all others similarly situated, the following relief:

      a.    Entry of judgment in favor of Mr. Thomas and Mr. Blackwell.

      b.    Compensatory and punitive damages.

## JURY DEMAND

Plaintiffs demand a trial by struck jury on all issues so triable.

/s/ Brian M. Clark
Brian M. Clark
Attorney for Plaintiffs

**OF COUNSEL**
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0530

Facsimile: (205) 254-1500
Email:  bclark@wigginschilds.com

/s/ J. Mark White
J. Mark White
Attorney for Plaintiffs

**OF COUNSEL**
WHITE ARNOLD & DOWD PC
2025 Third Avenue North
Birmingham, Alabama 35203
Email: mwhite@whitearnolddowd.com

/s/ Allan Armstrong
Allan Armstrong
Attorney for Plaintiffs

**OF COUNSEL**
ARMSTRONG LAW CENTER, LLC
The Berry Building
2820 Columbiana Road
Vestavia Hills, Alabama  35216
Birmingham, Alabama 35203
Email:  armstrong.atty@gmail.com

/s/ Darrell Cartwright
Darrell Cartwright
Attorney for Plaintiffs

**OF COUNSEL**
CARTWRIGHT LAW CENTER
Post Office Box 383204
Birmingham, Alabama  35238
Email:  dcartwright@gmail.com

/s/ Bill Baxley
Attorney for Plaintiffs

**OF COUNSEL**
BAXLEY JACKSON LAW FIRM

300 Vestavia Parkway, Ste. 3200
Vestavia Hills, Alabama 35216
Email: bill@baxleyjackson.com


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing

document has been properly served by way of the CM/ECF system, electronic mail,

and/or U.S. Mail to all counsel of record on this the 12th day of August, 2022.

        R. Warren Kinney, Esquire
        James W. Porter, III, Esquire
        PORTER, PORTER & HASSINGER, P.C.
        880 Montclair Road, Suite 175
        Birmingham, Alabama 35213

        Thomas S. Hale
        HALE SIDES LLC
        505 20th Street North, Suite 600
        Birmingham, Alabama 35203

                /s/ Brian M. Clark
                Of Counsel