FILED
2023 May-12  PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **SEAN WATTSON;** *et al.*, **individually and on behalf of the class,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **Case No.: 2:21-cv-649-AMM** |
| **TOWN OF BROOKSIDE, ALABAMA,** | ) ) ) | |
| **Defendant.** | ) ) | |

| | | |
|---|---|---|
| **COREY THOMAS;** *et al.*, **on behalf of himself and those similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **Case No.: 2:22-cv-157-AMM** |
| **TOWN OF BROOKSIDE, ALABAMA;** *et al.*, | ) ) ) | |
| **Defendants.** | ) ) | |

## <u>ORDER</u>

This case is before the court on several motions. The *Wattson* Plaintiffs filed

a motion to consolidate the above-styled actions, *Wattson* Doc. 29, which included

a request for leave to file a proposed consolidated amended complaint, *Wattson* Doc.

29-1. The Town of Brookside, Alabama ("the Town") opposed consolidation and filed a motion to dismiss the *Wattson* Plaintiffs' complaint. *Wattson* Docs. 32, 33. Defendants in the *Thomas* action moved to dismiss. *Thomas* Docs. 74, 75, 76, 77.

Plaintiffs in a separate action filed a motion in the *Thomas* action to reassign their separate action to the undersigned that is now moot and is **ADMINISTRATIVELY TERMINATED**. *Thomas* Doc. 72.

For the reasons stated below, the motion to consolidate is **GRANTED** and the above-styled cases are **CONSOLIDATED**. *Wattson* Doc. 29. All documents shall be filed in the lead case, *Wattson*. The court will not consider documents filed in *Thomas*. Every document filed in this consolidated matter must include the caption and case number of both cases.

The motions to dismiss are **GRANTED** in part and **DENIED** in part. *Wattson* Doc. 32; *Thomas* Docs. 74, 75, 76, 77. The request for leave to amend, *Wattson* Doc. 29, is **GRANTED** as to: (a) claims that survive dismissal; and (b) claims that are dismissed without prejudice because of pleading defects. The request for leave to amend is **DENIED** as to claims that are dismissed with prejudice because repleading those claims would be futile.

As explained below, this case has aged in part because Plaintiffs have taken many opportunities to replead. Plaintiffs have also repeatedly filed shotgun

pleadings. Accordingly, Plaintiffs are cautioned that the filing of another shotgun complaint may result in dismissal with prejudice of all claims.

Plaintiffs are **ORDERED** to file a consolidated class action complaint that complies with this order **WITHIN FOURTEEN DAYS**.

# I. BACKGROUND

## A. Procedural History

These cases are two of three putative class actions pending against the Town.[1] On May 7, 2021, Plaintiff Sean Wattson filed his action against the Town after the Town allegedly seized his car and retained it without affording him a hearing. *Wattson* Doc. 12 at 2. Mr. Wattson sued on behalf of a putative class of "[a]ll persons who have had property seized by the Town . . . beginning six (6) years before the filing of this action." *Wattson* Doc. 1 ¶ 24. Mr. Wattson asserted claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. *Wattson* Doc. 12 at 2.

On February 6, 2022, Plaintiff Corey Thomas filed a putative class action against the Town. *Thomas* Doc. 1. Mr. Thomas alleged that a police officer from the Town caused him to wreck his motorcycle and then charged him with several crimes, confiscated his cell phone, and gave his motorcycle to a lienholder. *Id.* ¶¶ 17-22. Mr. Thomas sued on behalf of a putative class of "[a]ll persons who have been denied

---

[1] The third is *Coleman et al. v. Town of Brookside et al.*, No. 2:22-cv-423-AMM.

access to, or had their property confiscated and retained by, the Town . . . when they have not been convicted of a misdemeanor or felony and/or all persons who have been charged excessive fines and court costs related to traffic[] stops or arrests by the Town[.]" *Id.* ¶ 27. Mr. Thomas alleged that the Town's "conduct violated the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution and further amounts to common law conversion of Mr. Thomas' property." *Id.* ¶ 26.

Mr. Wattson obtained leave and filed an amended (operative) class action complaint. *Wattson* Doc. 26. Three plaintiffs joined Mr. Wattson's action. *Id.* ¶¶ 2-4. Two of the new plaintiffs alleged that the Town wrongfully retained their vehicles, *id.* ¶¶ 23, 32, and the third alleged that when her car was returned to her after the Town seized it, a large sum of cash that had been in the car was missing, *id.* ¶¶ 37-39. The *Wattson* Plaintiffs asserted on behalf of a putative class claims under the Takings Clause of the Fifth Amendment and a state law claim under Alabama Code § 6-5-260. *Wattson* Doc. 26 at 13-14.

The *Thomas* Plaintiffs have amended their original complaint three times. Both the second amendment, *Thomas* Doc. 36, and the third amendment (which is the operative complaint), *Thomas* Doc. 63, are styled as the "Second Amended Class Action Complaint." In their operative complaint, the *Thomas* Plaintiffs asserted claims against the Town, Jett's Towing, Inc. ("Jett's Towing"), and several individuals who were allegedly employed by the Town as police officers. *Id.* ¶¶ 15-

4

40. The *Thomas* Plaintiffs assert constitutional claims under 42 U.S.C. § 1983; claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"); and a claim under state law. *Thomas* Doc. 63 at 30-61.

The Town has moved four times to dismiss the *Thomas* Plaintiffs' claims, and has moved twice to dismiss the *Wattson* Plaintiffs' claims. *Thomas* Docs. 10, 26, 44, 74; *Wattson* Docs. 6, 32. The other *Thomas* defendants also have moved to dismiss, many of them multiple times. *Thomas* Docs. 37, 45, 47, 52, 75, 76, 77.

After the *Thomas* Plaintiffs filed their operative complaint, the *Wattson* Plaintiffs moved to consolidate the cases and requested leave to file another amended complaint, this one joined by all remaining plaintiffs in the actions to be consolidated. *Wattson* Docs. 29, 29-1. The *Wattson* Plaintiffs have added their individualized allegations, but the proposed amended complaint, *Wattson* Doc. 29-1, is otherwise materially identical to the operative complaint in *Thomas* Doc. 63.

The pending motions are fully briefed.

## B. Allegations

### 1. The *Thomas* Complaint

In their operative complaint, Doc. 63, the *Thomas* plaintiffs alleged:

The Town has one business (a Dollar General), no stoplights, and fewer than 1,300 residents. *Id.* ¶¶ 43, 51. "In 2018, [the Town] had one full-time police officer

Case 2:22-cv-00157-AMM   Document 88   Filed 05/12/23   Page 6 of 44

. . . ." *Id.* ¶ 50. That year the Town's police impounded fifty cars and wrote 382 traffic citations, which generated $82,467.00 in fines. *Id.* ¶¶ 50, 72.

In 2018, the Town installed a new police chief, Mike Jones. *Id.* ¶ 72. Since then, the Town has "amass[ed] a small army as a police force," which includes "an armored riot control vehicle" and officers who undergo "SWAT team training." *Id.* ¶¶ 48-49. Only "a small portion of Interstate 22 . . . is within 1.5 miles of the [Town's] corporate limits," and the Town's police "officers regularly travel outside of the police jurisdiction" to ticket people. *Id.* ¶¶ 43, 45. In 2020, the Town wrote 3,024 traffic citations, towed and impounded 789 cars, and generated "up to $610,000.00" in revenue from fines, forfeitures, and fees. *Id.* ¶¶ 50, 72. That revenue accounted for approximately 49% of the Town's total revenue that year. *Id*. ¶ 72.

The Town's City Council appoints the municipal court judge, whose salary (like that of Council members) is paid from the Town's revenue. *Id*. ¶¶ 77-78. Between 2018 and 2020, "the municipal court judge's salary more than doubled[] and the [T]own's attorney's salary increased [by] over $50,000.00" *Id*. ¶ 74.

The Town uses only Jett's Towing to tow and impound vehicles following a stop. *Id*. ¶ 98. The Town did not select Jett's Towing through a formal bid process and does not have a contract with Jett's Towing, which the law requires. *Id*. ¶¶ 98-99. The Town collects "impound fees" that are "extracted by Jett's Towing," which fees are not "reasonably related to the costs of administrating the . . . impoundment

of vehicles." *Id.* ¶ 100-01. Fees are often imposed "for offenses not listed in the Town's ordinances." *Id.* ¶ 100.

The Town recently came under "intense scrutiny" and was the subject of a report by Alabama's Department of Examiners of Public Accounts. *Id.* ¶¶ 47, 65. Afterward, the Town's "police chief, Mike Jones, his second in charge, James Savelle, III and many officers . . . separated from the police department." *Id.* ¶ 47.

Each of the plaintiffs alleged their own story that (according to them) exemplifies how the Town abuses its police powers to generate fines, penalties, and court costs. *See id.* ¶¶ 52-144. Those allegations are summarized below.

In December of 2020, a Town police officer caused Mr. Thomas to wreck his motorcycle on I-22 beyond the jurisdictional limits of the Town's police department. *Id.* ¶¶ 52-59. The officer, who was "identified . . . only as 'Agent MM,'" then charged Mr. Thomas with several crimes and confiscated his cell phone and other items. *Id.* Mr. Thomas was able to track his phone to "the home of the arresting officer by using Apple's 'Find my iPhone' feature." *Id.* ¶ 59. The Town also "confiscated (and never returned)" Mr. Thomas's passenger's pistol even though she had a valid carry permit. *Id.* The Town refused to release Mr. Thomas's motorcycle and turned it over to a lienholder. *Id.* ¶¶ 60-62. Because of the Town's refusal, Mr. Thomas's insurance claim was denied and he was left liable for payments on the motorcycle. *Id.* ¶¶ 63-64.

Plaintiff Tinetta Jackson alleged that she was fined $410 for driving with an expired tag, which she says "is considerably more than" the $20 fine "allowed for by Alabama law." *Id.* ¶¶ 67-70, 83.

In December 2019, a Town police officer pulled over Plaintiff Keyarah Smith and "ticketed [her] for failing to have insurance." *Id.* ¶¶ 85-87. Ms. Smith had insurance but was unable to provide proof of it at the time of the stop. *Id.* ¶ 86.

Plaintiffs Ben Blackwell and James Donahue were pulled over beyond the jurisdiction of the Town's police and charged with possession of a stolen firearm, even though the firearm was "properly licensed" and not stolen. *Id.* ¶¶ 88-91. Mr. Blackwell and Mr. Donahue were jailed and then released without charges. *Id.* ¶ 91. Mr. Blackwell's pocket knife was confiscated and never returned to him. *Id.*

In August of 2019, a Town police officer pulled over Plaintiff Gerald Smith and charged him with possession of marijuana. *Id.* ¶¶ 92-94. "Mr. Smith's car was impounded, and he had to pay a fine to have his car released from impound." *Id.* ¶ 93.

Plaintiff Brittany Todd alleged that in June of 2020, she was "pulled over for a U-turn" and arrested, after which her car was towed and impounded until she paid "in excess of $300.00 to retrieve her vehicle." *Id.* ¶¶ 95-97.

In March of 2019, the Town impounded Plaintiff Zackary Harris's car and required him to pay a fine to the Town and a fee to Jett's Towing. *Id.* ¶¶ 103-05.

In May of 2021, Town police officers pulled over Plaintiff Angela Crawford, falsely accused her of running a stop sign and failing to appear for a traffic citation, arrested her, and had her car towed. *Id.* ¶¶ 106-115. Ms. Crawford had "to pay $181.12 to the Town . . . to obtain a release for her vehicle, and then pay Jett's Towing . . . $160.00 to get her car back." *Id.* ¶ 112.

In October of 2021, Town police officers pulled over Plaintiff Roger Grace beyond the Town's police jurisdiction, accused him of being impaired, and did not charge him. *Id.* ¶¶ 116-18.

In February of 2021, a Town police officer pulled over Plaintiff John Walker beyond the Town's corporate limits and wrote him a ticket for "following too closely." *Id.* ¶¶ 119-126. Mr. Walker was later arrested "for failing to appear at the trial date for" the ticket and "strip searched by . . . police officers" at the station. *Id.* ¶ 125.

In July of 2020, a Town police officer pulled over Plaintiff Daniel Kilgore beyond "the jurisdictional limits of the Town of Brookside Police Department" and arrested him for driving without a license or insurance. *Id*. ¶¶ 127-31. "Mr. Kilgore could readily have called someone to get his vehicle, [but] it was towed" and "Mr. Kilgore's family members were required to pay $175 to the Town . . . in order to get a form . . . [to] release the vehicle." *Id.* ¶¶ 130-31. Jett's Towing charged Mr. Kilgore's family a separate $160 fee to release the vehicle. *Id*. ¶ 131.

On three occasions in June and July of 2021, Plaintiff Sean Jones was pulled over beyond the jurisdictional limits of the Town's police "and charged with driving without insurance." *Id.* ¶¶ 132-41. Mr. Jones had insurance but was unable to provide proof of it during the stops. *Id.* ¶ 133. Mr. Jones was later arrested by Town police on a drug paraphernalia charge and his car was towed. *Id.* ¶¶ 138, 140-41. The Town's police left Mr. Jones in a cell for more than five hours without the wheelchair that he uses. *Id.* ¶ 139. Mr. Jones was forced to "drag himself across the floor" when he needed to use the toilet. *Id.* Mr. Jones was "fined thousands of dollars" on the drug paraphernalia charge, and he had to pay separate fees to the Town and to Jett's Towing to have his car released. *Id.* ¶¶ 140-41.

In March of 2021, Plaintiff Darren LeCroy was "pulled over and detained, and eventually charged with Domestic Violence 3rd degree, even though" his girlfriend did not "s[wear] out a warrant against [him], or even ma[k]e a complaint." *Id.* ¶¶ 142-44. "Mr. LeCroy's vehicle was towed, and he had to pay a fee to the Town . . . to get his car released, and then another fee to Jett's Towing." *Id.* ¶ 144.

The *Thomas* Plaintiffs assert claims on behalf of putative classes in eleven counts:

In Count I, Plaintiffs assert that the Town and the individual officers conspired to violate their substantive due process rights under the Fourteenth Amendment because the Town and the individual defendants participated in a system of

financially-incentivized law enforcement "designed to maximize revenue." *Id.* ¶¶ 153-61.

In Count II, Plaintiffs assert that the Town, Jett's Towing, and the individual officers conspired to violate their substantive due process rights under the Fourteenth Amendment because they created and participated in a system that financially incentivized the seizure of cars in order to tow them and generate fee revenue. *Id.* ¶¶ 162-69.

In Count III, Plaintiffs assert that the Town's "out-of-jurisdiction arrests, seizures, and fines" violated their substantive due process rights under the Fourteenth Amendment and their right to be free from unreasonable searches and seizures under the Fourth Amendment. *Id.* ¶¶ 170-81.

In Count IV, Plaintiffs assert claims similar to their claims in Count III, except that Plaintiffs allege that the Town and the individual officers conspired to violate their rights under the Fourth Amendment and their substantive due process rights under the Fourteenth Amendment when the Town's police officers made "extra-jurisdictional traffic stops." *Id.* ¶¶ 182-90.

In Count V, Plaintiffs assert that the Town, the individual officers, and Jett's Towing conspired to violate their substantive due process rights under the Fourteenth Amendment, and their rights under the Fourth, Fifth, and Eighth Amendments, when the defendants used Jett's Towing to "seiz[e] . . . vehicles

pursuant to routine traffic stops, without any further process and without filing a Civil Asset Forfeiture Action pursuant to [state law]." *Id.* ¶¶ 195, 203.

In Count VI, Plaintiffs assert that the Town violated their Eighth Amendment rights when they were "fined in excess of the State mandated proportionate amount" for their charged offenses. *Id.* ¶ 211.

In Count VII, Plaintiffs assert Eighth Amendment claims similar to those in Count VI, except that Plaintiffs assert that the individual officers conspired with the Town to collect excessive fines. *Id.* ¶¶ 213-20.

In Count VIII, Plaintiffs assert that the traffic stops made by the individual officers were extortionary and violated RICO. *Id*. ¶¶ 221-34.

In Count IX, Plaintiffs assert RICO claims similar to those in Count VIII, except that Count IX is asserted against the individual officers and Jett's Towing. *Id*. ¶¶ 235-51.

In Count X, Plaintiffs assert that their substantive due process rights under the Fourteenth Amendment were violated when they were allegedly stopped outside of the Town's police jurisdiction and subjected to "wrongful detention and jailing." *Id.* ¶¶ 252-62.

In Count XI, Mr. Thomas and Mr. Blackwell assert a claim against the Town for conversion under state law. *Id.* ¶¶ 263-73. It is unclear whether Plaintiffs meant to assert Count XI on behalf of a class. *See id.* ¶ 273.

Except potentially for Count XI, Plaintiffs did not assert individual claims in the counts. Instead, Plaintiffs asserted their claims on behalf a putative class and four putative subclasses. The putative class is a traffic stop class. *Id*. ¶ 145. The four putative subclasses are: (a) an extra-jurisdictional stop class; (b) a towing class; (c) a fines class; and (d) a prolonged stop class. *Id*.

### 2. The *Wattson* Complaint

In their amended (operative) complaint, Doc. 26, the *Wattson* Plaintiffs alleged:

For almost nine months after the Town had Mr. Wattson's car impounded in January of 2021, the Town failed to institute civil forfeiture proceedings and did not respond to his many requests concerning how to "retrieve his vehicle." *Id*. ¶¶ 7-16. When the car was returned to Mr. Wattson in September of 2021, it was in disrepair. *Id*. ¶ 16.

Plaintiff Katelyn Lawrence was the passenger on Mr. Thomas's motorcycle during the events recounted *supra* p. 7. *Id*. ¶¶ 17-25. Ms. Lawrence was a joint owner of the motorcycle, her insurance claim was denied, and she has "defaulted on the note." *Id*. ¶¶ 22, 25.

Plaintiff Cedric Killings was pulled over and his car was towed. *Id*. ¶¶ 26-32. Mr. Killings was told that he needed to provide the Town with the bill of sale for the

car to have his vehicle released, but he has the bill of sale and "still cannot get his vehicle release[d]." *Id*. ¶¶ 31-32.

Plaintiff Tiffany Burks was pulled over and her car was towed. *Id*. ¶¶ 33-39. When her car was returned to her, $3,500 in cash was missing from it. *Id*. ¶¶ 38-39.

The *Wattson* Plaintiffs sued on behalf of a putative class of "[a]ll persons who have had property seized by the Town . . . beginning six (6) years before the filing of this action. *Id*. ¶ 52. The *Wattson* Plaintiffs asserted claims against the Town in two counts: (1) a claim under the Takings Clause of the Fifth Amendment; (2) a claim under state law. *Id*. ¶¶ 60-67.

### 3. The Proposed Consolidated Complaint

The proposed amended complaint, Doc. 29-1, is materially identical to the operative complaint in *Thomas*, except that the *Wattson* Plaintiffs (minus Mr. Killings and Ms. Burks) have added their individualized allegations and their claim under the Takings Clause of the Fifth Amendment. *Id*. ¶¶ 286-92. In response to the motions to dismiss in *Wattson* and *Thomas* (which were filed shortly after the *Wattson* Plaintiffs' request to file the proposed amended complaint), the *Wattson* and *Thomas* plaintiffs did not request leave to file an amended complaint to cure the pleading deficiencies that Defendants identified in those motions. *See Thomas* Doc. 83; *Wattson* Doc. 36.

## II. LEGAL STANDARDS

### A. Motions to Dismiss

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not make "detailed factual allegations"; its purpose is only to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). To survive a motion to dismiss based on Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* But "courts are not bound to accept as true a legal conclusion couched as a factual allegation," such as the "recitation of [an] element[] of a cause of action." *Id.* (cleaned up).

To test the complaint, the court discards any "conclusory allegations," takes the facts alleged as true, *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018), and "draw[s] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

15

### B. Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." The Eleventh Circuit has "explained that Rule 15(a)(2) severely restricts a district court's ability to dismiss with prejudice." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (cleaned up). "Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Id.* (cleaned up) (emphasis omitted).

"Under Rule 15(a), a district court need not give leave to amend under three circumstances: (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* (cleaned up).

"A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

### C. Motion to Consolidate

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a)(2). "Rule 42(a) codifies the district court's inherent managerial power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 727 F. App'x 562, 570 (11th Cir. 2018) (cleaned up).

## III. ANALYSIS

### A. Motions To Dismiss

#### 1. Fourth Amendment Claims

Although Plaintiffs refer in passing to their Fourth Amendment rights in Counts III and IV (which challenge alleged extra-jurisdictional seizures and arrests), the relief they demanded in those counts was a declaration that the extra-jurisdictional seizures and arrests violated their substantive due process rights under the Fourteenth Amendment. *Thomas* Doc. 63 ¶¶ 181(c), 190(c). And Plaintiffs clarified in response to the motions to dismiss that their extra-jurisdictional seizure claims are based on their substantive due process rights under the Fourteenth Amendment. *Thomas* Doc. 83 at 10-11; *see also id.* at 21.

In Count V, Plaintiffs assert claims on behalf of a putative class of people "who had their automobiles towed and impounded . . . as the result of a traffic stop,"

as "represented by plaintiffs Todd, Harris, Crawford, Kilgore, Jones, and LeCroy." *Thomas* Doc. 63 ¶¶ 145 ("Subclass B"), 193. Plaintiffs alleged that "seizing . . . vehicles pursuant to routine traffic stops, without any further process . . . , is an unreasonable seizure of property under the Fourth Amendment." *Id.* ¶ 203. Accordingly, for purposes of deciding whether Plaintiffs have pleaded a Fourth Amendment violation, the court analyzes only the claims related to towing (Count V), not the claims related to extra-jurisdictional seizures (Counts III and IV).

The Fourth Amendment protects the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. "[S]ome quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure." *United States v. Martinez-Fuerte*, 428 U.S. 543, 560 (1976).

"Ordinarily, the seizure of personal property is *per se* unreasonable unless the seizure is pursuant to a warrant issued upon probable cause." *United States v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007). "However, the . . . seizure of vehicles without a warrant is permissible when the police have probable cause to believe a vehicle contains contraband." *Id.* Likewise "weapons . . . found in a public place may be seized by the police without a warrant." *United States v. Place*, 462 U.S. 696, 701 (1983) (cleaned up). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found." *Virden*, 488 F.3d at 1322 (cleaned up).

"Police officers have 'both the right and the duty' to take into custody . . . a[n] [arrestee's] property that would otherwise be left unattended." *United States v. Forget*, 853 F. App'x 534, 540 (11th Cir. 2021) (quoting *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980) (holding that arresting officers "had both the right and the duty to protect [an] automobile" "which would otherwise have been left unattended [after the arrest], possibly for an extended period of time, in a mall parking lot")).

The Town asserted that towing a car pursuant to an arrest is consistent with its "community caretaking" obligations, and that Plaintiffs' did not "allege[] that their arrests were illegal or invalid," so "seizing their automobiles . . . w[as] not unreasonable under the Fourth Amendment." *Thomas* Doc. 74 at 21, 30 (cleaned up).

In their opposition, Plaintiffs rely on a case involving "noncustodial arrest[s]"—*i.e.*, arrests that do not involve taking the arrestee into custody—but Plaintiffs did not allege that their arrests were noncustodial. Doc. 83 at 20. Plaintiffs then discuss the alleged arrests of Mr. Thomas, Mr. Blackwell, and Mr. Donahue, *id*. at 20-22, but those plaintiffs are not members of the subclass prosecuting claims in Count V. *See Thomas* Doc. 63 ¶¶ 145 ("Subclass B"), 193. Plaintiffs did not assert (let alone establish) that they could withstand the Town's arguments for dismissal

19

based on their allegations about the other members of the subclass prosecuting claims in Count V.

The *Thomas* Plaintiffs are represented by counsel and did not request leave to replead their complaint a fifth time to cure the deficiencies the Town identified. *See Thomas* Doc. 83. The consolidated amended complaint that the plaintiffs proposed, Doc. 29-1, which is materially identical to the *Thomas* complaint, does not cure those deficiencies. Accordingly, the court finds that allowing further repleader of Plaintiffs' Fourth Amendment claims would be futile and is not required under binding precedent. *See Wagner*, 314 F.3d at 542; *Garcia*, 48 F.4th at 1220. The motion to dismiss Plaintiffs' claims is **GRANTED** as to Fourth Amendment claims and those claims are **DISMISSED WITH PREJUDICE**.

### 2. Fifth Amendment Claims

#### a. The *Thomas* Complaint

In Count V, the *Thomas* Plaintiffs assert Fifth Amendment claims on behalf of a putative class of people "who had their automobiles towed and impounded . . . as the result of a traffic stop," as "represented by plaintiffs Todd, Harris, Crawford, Kilgore, Jones, and LeCroy." Doc. 63 ¶¶ 145 ("Subclass B"), 193. Plaintiffs alleged that "seizing . . . vehicles pursuant to routine traffic stops, without any further process and without filing a Civil Asset Forfeiture Action" is "a taking of property without just compensation prohibited by the Fifth Amendment[.]" *Id.* ¶ 203.

20

The Town asserted that towing a vehicle "incident to [a] custodial arrest[]" is not a "tak[ing]." *Thomas* Doc. 74 at 18 (cleaned up). In their response, Plaintiffs did not address that argument. *See Thomas* Doc. 83 at 16-17. The court agrees with the Town. Because "[p]olice officers have 'both the right and the duty' to take into custody . . . a[n] [arrestee's] property that would otherwise be left unattended," *Forget*, 853 F. App'x at 540 (quoting *Staller*, 616 F.2d at 1290, Plaintiffs have not plausibly pleaded that their Fifth Amendment rights were violated when their cars were impounded in connection with an arrest.

The *Thomas* Plaintiffs are represented by counsel and did not request leave to replead their complaint a fifth time to cure the deficiencies the Town identified. *See Thomas* Doc. 83. The consolidated amended complaint that the plaintiffs proposed, *Wattson* Doc. 29-1, which is materially identical to the *Thomas* complaint, does not cure those deficiencies. Accordingly, the court finds that allowing further repleader of Plaintiffs' Fifth Amendment claims would be futile and is not required under binding precedent. *See Wagner*, 314 F.3d at 542; *Garcia*, 48 F.4th at 1220. The motion to dismiss is **GRANTED** as to the *Thomas* Plaintiffs' Fifth Amendment claims and those claims are **DISMISSED WITH PREJUDICE**.

### b. The *Wattson* Complaint

The *Wattson* Plaintiffs assert a Fifth Amendment claim on behalf of a putative class of people "who have had property seized by the Town." *Wattson* Doc. 26 ¶¶

52, 60-63. Mr. Wattson's and Ms. Lawrence's vehicles were towed incident to an arrest. *Id.* ¶¶ 9-10, 20-22; *Wattson* Doc. 29-1 ¶¶ 59, 85. It appears that Mr. Killings's vehicle also may have been towed incident to an arrest, *Wattson* Doc. 26 ¶ 29; *see also Wattson* Doc. 36 at 8-9, but it appears that he is no longer pursing his claims, *see Wattson* Doc. 29-1. Ms. Burks alleged that cash was missing from her car when it was returned to her after it was towed incident to an arrest, and that "[n]obody has been able to tell her what happened to her money," *Wattson* Doc. 26 ¶¶ 35-36, 39, but it appears that Ms. Burks also is no longer pursuing her claims, *see Wattson* Doc. 29-1.

The *Wattson* Plaintiffs' Fifth Amendment claims are similar to the *Thomas* Plaintiffs' Fifth Amendment claims, and the Town asserted that those claims fail for a similar reason: seizing a vehicle incident to the arrest of the driver is not a taking. *Wattson* Doc. 32 at 7; *see also Forget*, 853 F. App'x at 540. In response to the Town's motion to dismiss, the *Wattson* Plaintiffs asserted that the court previously denied the Town's motion to dismiss Mr. Wattson's claim under the Takings Clause of the Fifth Amendment and that "there is no reason to reverse course now." *Wattson* Doc. 36 at 10-11.

On reply, the Town asserted that the pleadings have changed. *See Wattson* Doc. 38 at 1-2. When the court denied the Town's motion to dismiss Mr. Wattson's Fifth Amendment claim in his original complaint, his allegation was that the Town

had not returned his car, and the court distinguished many of the cases the Town cited to support dismissal on the basis that the seized property had been returned in those cases. *Wattson* Doc. 12 at 8-10. In his amended complaint, Mr. Wattson alleged that his car was returned after nearly nine months. *Wattson* Doc. 26 ¶ 16. Mr. Wattson did not cite a case holding that the government had taken a car for public use when the car was towed incident to an arrest and returned less than nine months later. *See Wattson* Doc. 36 at 8-11.

The Town asserted that Ms. Burks (whose cash was allegedly taken without explanation) has not plausibly pleaded that the taking was for public use. *Wattson* Doc. 32 at 7. Ms. Burks did not explain in her response why it is plausible that her cash was taken for public use, *see Wattson* Doc. 36 at 8-9, and in any event, it appears she is no longer pursuing her claims, *see Wattson* Doc. 29-1.

The *Wattson* Plaintiffs are represented by counsel and did not request leave to replead their complaint to cure the deficiencies the Town identified. *See Wattson* Doc. 36. In the proposed amended consolidated complaint, Plaintiffs added Mr. Wattson (but not Ms. Lawrence) as a putative class representative on the claim in Count V, but otherwise did not alter the allegations from the *Thomas* complaint that support the Fifth Amendment claims. *See Wattson* Doc. 29-1 ¶ 215. In Count XI of the proposed amended complaint, Plaintiffs merely recited the elements of a Fifth Amendment Takings claim. *Id.* ¶¶ 286-92. Those conclusory allegations do not cure

the deficiencies or otherwise state a Fifth Amendment claim. Accordingly, the court finds that allowing further repleader of Plaintiffs' Fifth Amendment claims would be futile and is not required under binding precedent. *See Wagner*, 314 F.3d at 542; *Garcia*, 48 F.4th at 1220. The motion to dismiss is **GRANTED** as to the *Wattson* Plaintiffs' Fifth Amendment claims and those claims are **DISMISSED WITH PREJUDICE**.

### 3. Eighth Amendment Claims

The *Thomas* Plaintiffs asserted claims under the Excessive Fines Clause of the Eighth Amendment in three counts: one challenging impound fees (Count V) and two challenging fines for charged offenses (Counts VI and VII). In Count V, Plaintiffs assert that the Town, the individual officers, and Jett's Towing conspired to violate their rights under the Eighth Amendment when the defendants used Jett's Towing to "seiz[e] . . .vehicles pursuant to routine traffic stops, without any further process," in order to extract an impound fee, which fee was "disproportional to the fines for the actual offense charged." *Thomas* Doc. 63 ¶¶ 195, 197, 203.

In Count VI, Plaintiffs assert that the Town violated their Eighth Amendment rights when they were "fined in excess of the State mandated proportionate amount" for their charged offenses. *Id.* ¶ 211. In Count VII, Plaintiffs assert Eighth Amendment claims similar to those in Count VI, except that Plaintiffs assert that the individual officers conspired with the Town to collect excessive fines. *Id.* ¶¶ 213-

20. The claims in Counts VI and VII are asserted by Ms. Jackson, Ms. Keyarah Smith, Mr. Harris, and Mr. Kilgore on behalf of a putative class of people who were fined for traffic offenses. *Id.* ¶¶ 145 ("Subclass C"), 206, 214.

The Eighth Amendment provides that "excessive fines" shall not be "imposed." U.S. Const. amend. VIII. "[T]he Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government." *Austin v. United States*, 509 U.S. 602, 607 (1993) (cleaned up). "The Excessive Fines Clause limits the government's power to extract payments." *Id.* at 609-10. A "payment . . . discharge[s] a debt or an obligation." *Id.* at 624 (Scalia, J., concurring) (cleaned up). When a plaintiff challenges a fine under the Eighth Amendment, "the question is not" whether the challenged fine "is civil or criminal, but rather whether it is punishment." *Id.* at 610.

The Town asserted that the Eighth Amendment challenge to impound fees fail to two reasons. *First*, "the Eighth Amendment applies only to those individuals actually convicted of a crime." *Thomas* Doc. 74 at 26 (cleaned up). The court already rejected that argument when it ruled on the Town's motion to dismiss Mr. Wattson's original complaint. *Wattson* Doc. 12 at 6. In *Austin*, the Supreme Court held that the Eighth Amendment can apply in non-criminal proceedings, 509 U.S. at 610, so the Town's assertion fails.

*Second*, the Town asserted that "[a]ny payments . . . associated with the towing of their vehicles were not punishment," but "remedial." *Thomas* Doc. 74 at 27. The Town did not cite authority that would define when a payment is punitive or remedial. At any rate, the court will not infer that the payments were remedial. Plaintiffs alleged that the Town collected impound fees that were separate from the fee paid to Jett's Towing; were required to be paid to the Town before impounded cars were released; and were unrelated to the Town's costs. *Thomas* Doc. 63 ¶¶ 101, 131. From those allegations, a reasonable inference could arise that the Town's impound fees were punitive. Accordingly, the motion to dismiss the Eighth Amendment claims against the Town in Count V is **DENIED**.

The Town asserted that the Eighth Amendment challenges to the fines imposed for convictions of charged offenses in Counts VI and VII must be dismissed for many reasons, but the court need only address one of them. Plaintiffs' allegations about the excessiveness of fines imposed on Mr. Harris, Mr. Kilgore, and Ms. Keyarah Smith are conclusory, so those allegations must be discarded. *Id*. ¶¶ 87, 104-05, 130. After those allegations are discarded, only the allegations about Ms. Jackson are left to support their claims in Counts VI and VII.

The Town asserted that Plaintiffs have supported their claims with materially misrepresentative allegations. *Thomas* Doc. 74 at 27-28 & n.9. Ms. Jackson alleged that she "was charged with an expired tag and fined $410," which is more than the

$20 fine authorized by Alabama law. *Thomas* Doc. 63 ¶ 68, 83; *see also Wattson* Doc. 29-1 ¶¶ 90, 105. The Town asserted (and Ms. Jackson did not contest) that the court can take judicial notice of the fact that its municipal court records reflect that Ms. Jackson was charged not only with an expired tag (for which she was fined $20 plus court costs), but also with failure to display proof of insurance. *Thomas* Doc. 74 at 20 n.7, 28; *see Thomas* Doc. 26-1 at 23-24. Ms. Jackson did not respond to the accusation that she had materially misrepresented the facts in her complaint. *See Thomas* Doc. 83.

The *Thomas* Plaintiffs are represented by counsel and did not request leave to replead their complaint a fifth time to cure the deficiencies the Town identified with regard to the Eighth Amendment claims in Counts VI and VII. *See id*. The consolidated amended complaint that the plaintiffs proposed, *Wattson* Doc. 29-1, which is materially identical to the *Thomas* complaint, does not cure those deficiencies. Accordingly, the court finds that allowing further repleader of Plaintiffs' Eighth Amendment claims in Counts VI and VII would be futile and is not required under binding precedent. *See Wagner*, 314 F.3d at 542; *Garcia*, 48 F.4th at 1220. The motion to dismiss is **GRANTED** as to the *Thomas* Plaintiffs' Eighth Amendment claims in Counts VI and VII and those claims are **DISMISSED WITH PREJUDICE**.

### 4. Fourteenth Amendment Claims

In Count I (against the Town and the individual officers) and Count II (against all defendants), the *Thomas* Plaintiffs asserted that their rights under the substantive due process provision of the Fourteenth Amendment were violated when the defendants participated in a law enforcement system improperly driven by financial incentives. *Thomas* Doc. 63 ¶¶ 153-69.

In Counts III (against the Town) and IV (against the Town and the individual officers), Plaintiffs assert that "out-of-jurisdiction arrests, seizures, and fines" violated their substantive due process rights under the Fourteenth Amendment. *Id.* ¶¶ 170-90.

In Count V, Plaintiffs assert that the Town, the individual officers, and Jett's Towing conspired to violate their substantive due process rights under the Fourteenth Amendments when the defendants used Jett's Towing to "seiz[e] . . . vehicles pursuant to routine traffic stops, without any further process," "because such seizures are not related to any legitimate governmental interests." *Id.* ¶ 203.

In Count X, Plaintiffs assert that that Town violated their substantive due process rights under the Fourteenth Amendment when they were stopped outside of the Town's police jurisdiction and subjected to "wrongful detention and jailing." *Id.* ¶¶ 252-62.

28

The Due Process Clause of the Fourteenth Amendment has a "substantive" component that protects against "certain government actions regardless of the fairness of the procedures used to implement them," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (cleaned up), such as legislative actions that are not "rationally related to the [government's] objective," *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 199 (1979) (cleaned up). "Under rational basis review," a plaintiff "must negate every conceivable basis that might support" the challenged legislative action, "even if that basis has no foundation in the record." *Ga. Elec. Life Safety & Sys. Ass'n, Inc. v. City of Sandy Springs*, 965 F.3d 1270, 1276 (11th Cir. 2020) (cleaned up).

The substantive due process component of the Fourteenth Amendment also protects against certain executive actions that "can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009). "[A]ctions intended to injure in some way unjustifiable by any government interest are those mostly likely to rise to the conscience-shocking level." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1376 (11th Cir. 2002) (cleaned up).

The Due Process Clause also has a procedural component that "guarantee[s] . . . fair process." *Cnty. of Sacramento*, 523 U.S. at 840. The Eleventh Circuit recently used the framework applicable to procedural due process to analyze claims of financially biased law enforcement. *See Brucker v. City of Doraville*, 38 F.4th

876, 881 (11th Cir. 2022). But the Eleventh Circuit has also suggested that "the substantive/procedural distinction" does not matter when analyzing the kind of actions challenged in Counts I and II. *See McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994).

The Town asserted that Plaintiffs failed to plead a substantive due process violation because they did not "identify . . . the substantive right[] . . . the Town allegedly infringed," and did not "negate every conceivable basis that might support" the Town's actions. *Thomas* Doc. 74 at 23 (cleaned up). Plaintiffs failed to address that argument in their response. *See Thomas* Doc. 83 at 20-22. Plaintiffs referred in passing to their interest in not having their personal property subject to "continuous retention," not having their vehicle seized "during routine traffic violations," and not being "improperly jailed," but Plaintiffs did not cite authority for an assertion that those are constitutional rights that are proper subjects of a substantive due process claim. *Id.* (emphasis omitted).

As the court discussed in an order denying the Town's motion to dismiss the *Coleman* Plaintiffs' claims, a challenge to an allegedly financially-compromised law enforcement system may be the proper subject of a procedural due process claim. *Coleman* Doc. 80. The *Coleman* Plaintiffs' factual allegations plausibly suggested that the Town's law enforcement system violated the impartiality requirement of the Due Process Clause. *See id.* In particular, the *Coleman* Plaintiffs alleged specifics

30

about the Town's annual revenue from fines and forfeitures from 2017 to 2020, how that revenue was generated and distributed, and the ways in which the Town enforced a mandatory impound fee. *Id.* at 2-6.

Plaintiffs in this case alleged some facts about the Town's revenue from fines (it allegedly increased from $82,467 in 2018 to $610,000 in 2020) and how that revenue was distributed (it allegedly funded a police force the size of "a small army"), although not nearly as much as the *Coleman* Plaintiffs alleged. *Compare Thomas* Doc. 63 ¶¶ 43-51, *and Wattson* Doc. 29-1 ¶¶ 45-53, *with Coleman* Doc. 32 ¶¶ 8-22, 40-70, 95-152, 161-75, 188-200. At any rate, Plaintiffs in this case have not asserted procedural due process claims. *Thomas* Doc. 63 ¶¶ 160, 168, 178, 184, 189, 195, 254; *Wattson* Doc. 29-1 ¶¶ 182, 190, 200, 206, 217, 277.

As for Plaintiffs' claims in Counts III, IV, V, and X, which assert that particular traffic stops violated their substantive due process rights, the Town asserted that such stops are governed by the Fourth Amendment, not the Due Process Clause of the Fourteenth Amendment. *Thomas* Doc. 74 at 14, 24-25. Plaintiffs did not respond to that assertion. *See Thomas* Doc. 83 at 20-22. The court agrees with the Town. Where "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S.

31

386, 395 (1989) (cleaned up). The Town made a similar argument about the *Coleman* Plaintiffs' procedural due process claims, but the argument failed in that case because those claims challenged the system by which the Town funded law enforcement, not the circumstances related to particular traffic stops. *See Coleman* Doc. 80 at 26-29.

Because the Fourth Amendment governs the kind of actions that Plaintiffs challenge, allowing repleader of Plaintiffs' substantive due process claims would be futile. Moreover, the *Thomas* Plaintiffs are represented by counsel and did not request leave to replead their complaint a fifth time to cure the deficiencies the Town identified with regard to their substantive due process claims. *See Thomas* Doc. 83. The consolidated amended complaint that the plaintiffs proposed, *Wattson* Doc. 29-1, which is materially identical to the *Thomas* complaint, does not cure those deficiencies. The court finds that allowing further repleader of Plaintiffs' substantive due process claims would be futile and is not required under binding precedent. *See Wagner*, 314 F.3d at 542; *Garcia*, 48 F.4th at 1220. Accordingly, the motions to dismiss the substantive due process claims are **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**.

### 5. Conspiracy Claims Against The Town

In Counts I, II, IV, V, and VII, the *Thomas* Plaintiffs alleged (in addition to the claims for constitutional violations) that the Town conspired with the individual

32

officers (and with Jett's Towing in Counts II and V) to violate the constitution and asserted conspiracy claims under Section 1983. *Thomas* Doc. 63 ¶¶ 154, 163, 183, 192, 215.

"To sustain a conspiracy action under § 1983 a plaintiff must show an underlying actual denial of his constitutional rights." *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) (cleaned up). When a plaintiff fails to state a claim for violation of a constitutional right, "his § 1983 conspiracy claim necessarily fails." *Foster v. Cherokee Cnty.*, 744 F. App'x 644, 647 (11th Cir. 2018).

For the reasons already discussed above, Plaintiffs failed to plead constitutional violations in Counts I, II, IV, and VII. Accordingly, the Town's motion to dismiss the conspiracy claims in those counts is **GRANTED**.

Plaintiffs' surviving claim against the Town in Count V asserts an Eighth Amendment challenge to the imposition of impound fees. *Thomas* Doc. 63 ¶¶ 195, 197, 203. The Town asserted that the allegations of a conspiracy are conclusory and must be discarded. *Thomas* Doc. 74 at 31. The court agrees insofar as the allegations are conclusory that the Town conspired with any of the defendant individual officers. *See Thomas* Doc. 63 ¶ 39. Plaintiffs' only factual allegation about each of the individual officers (other than Chief Jones and James Savelle, III) is that each "was a police officer employed by the Town . . . over the last three years." *Id*. ¶¶ 16-38. Plaintiffs alleged that Chief Jones and Officer Savelle "separated from the police

department" following the "recent intense scrutiny" into the Town's activities. *Id.* ¶ 47. Plaintiffs' allegation that other individual officers violated the law is conclusory, *id.* ¶ 39, so it must be discarded on a motion to dismiss. Plaintiffs did not allege facts about how a particular officer participated in a conspiracy to collect impound fees. Accordingly, the conspiracy claim against the Town may not be based on Plaintiffs' allegations about the Town and the individual officers.

However, Plaintiffs made factual allegations that support a claim of conspiracy between the Town and Jett's Towing to collect impound fees. In particular, Plaintiffs alleged that the Town uses only Jett's Towing to tow and impound vehicles, that the Town did not select Jett's Towing through a formal bid process and does not have a contract with Jett's Towing (which state law allegedly requires), and that Jett's Towing "extract[s]" the Town's impound fees. *Id.* ¶¶ 99, 194, 196-200.

According to Jett's Towing, "the only [alleged] facts" about the conspiracy between it and the Town "are that they towed the vehicles after the plaintiff was arrested by Brookside, and the Plaintiffs had to pay a fee to Jett's to get their vehicle back." *Thomas* Doc. 76 at 2-3. Jett's Towing asserted that it "did not have any agreement with the Town of Brookside to tow vehicles" and that the alleged unconstitutional impoundment fees were "Brookside['s] not Jett's." *Id.* at 6.

Plaintiffs responded that they pleaded a "non-bid agreement" between the Town and Jett's Towing, that an "agreement may [be] inferred from the[ir] relationship," and that the agreement enabled the Town to "extort towing fees" that are the subject of Plaintiffs' Eighth Amendment claim. *Thomas* Doc. 82 at 32-33.

Jett's Towing asserted also that its own fees were reasonable and that it "is not a governmental agency and [therefore] cannot violate a person's [c]onstitutional rights." *Thomas* Doc. 76 at 7. But that assertion misunderstands the nature of Plaintiffs' claim. As the court understands it, Plaintiffs' Eighth Amendment conspiracy claim against Jett's Towing does not specifically target Jett's Towing's own fee as a standalone violation of the Eighth Amendment; rather, Plaintiffs assert that the towing company's fee was how Jett's Towing benefitted from a conspiracy with the Town to enforce the Town's fee, which fee violated the Eighth Amendment. *See Thomas* Doc. 83 at 2, 30-33; *Thomas* Doc. 82 at 3, 8.

At this early stage of the proceedings, Plaintiffs' allegations are sufficient to raise an inference that Jett's Towing and the Town had an agreement about Jett's Towing's role in the collection of impound fees and that those fees violated the Eighth Amendment. Accordingly, the Town's motion to dismiss the conspiracy claim in Count V is **DENIED**.

### 6. Claims Against the Individual Officers and Jett's Towing

Plaintiffs asserted conspiracy claims against the individual officers in Counts I, II, IV, V, and VII, and against Jett's Towing in Counts II and V. For the reasons discussed *supra* pp. 32-34 (citing *Hadley*, 526 F.3d at 1332), the individual officers' motion to dismiss those conspiracy claims is **GRANTED**. Jett's Towing's motion to dismiss the conspiracy claims against it is **GRANTED** except with regard to the claim in Count V that Jett's Towing conspired with the Town to extract impound fees that are the subject of an Eighth Amendment challenge.

In Count VIII, Plaintiffs assert that the traffic stops by individual officers were extortionary and violated RICO. *Thomas* Doc. 63 ¶¶ 221-34. In Count IX, Plaintiffs assert RICO claims similar to those in Count VIII, except that Count IX is asserted against the individual officers and Jett's Towing. Count IX is asserted by Ms. Todd and Mr. Harris on behalf of a putative class of people who "had their automobiles towed and impounded by Jett's Towing, as the result of a traffic stop by the Town." *Id*. ¶¶ 145, 236.

RICO "prohibits certain conduct involving a 'pattern of racketeering activity.'" *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (quoting 18 U.S.C. § 1962). "One of RICO's enforcement mechanisms is a private right of action, available to any person injured in his business or property by reason of a violation of the RICO's substantive restrictions." *Id.* (cleaned up). "Essential to any

successful RICO claim are the basic requirements of establishing a RICO enterprise and a pattern of racketeering activity." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (cleaned up). "A RICO enterprise exists where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." *Id.* (cleaned up).

Plaintiffs' only factual allegation about each of the individual officers (other than Chief Jones and James Savelle, III) is that each "was a police officer employed by the Town . . . over the last three years." *Thomas* Doc. 63 ¶¶ 16-38. Plaintiffs alleged that Chief Jones and Officer Savelle "separated from the police department" following the "recent intense scrutiny" into the Town's activities. *Id.* ¶ 47. Plaintiffs' allegation that other individual officers violated the law is conclusory, *id.* ¶ 39, so it must be discarded on a motion to dismiss.

Plaintiffs have not alleged enough factual matter as to each individual officer to plausibly suggest that each purposefully engaged in illegal activity. *See Thomas* Doc. 63 ¶¶ 16-38, 47. Accordingly, the individual officers' motion to dismiss the RICO claims against them is **GRANTED**.

Plaintiffs asserted that the illegal activity in which Jett's Towing engaged was its participation in the Town's towing system to extract payments of impoundment fees from "people subject to traffic stops" on Interstate 22. *Id*. ¶¶ 243-44. According to Plaintiffs, Jett's Towing's participation in extracting those impoundment fees is

illegal under the Hobbs Act, 18 U.S.C. § 1951, which prohibits certain kinds of extortion. *Id.* ¶¶ 245-49. "The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

Jett's Towing moved to dismiss Plaintiffs' RICO claim largely based on the same arguments it made about Plaintiffs' conspiracy claim under the Eighth Amendment, *see Thomas* Doc. 76 at 6-10, which arguments the court already rejected. Jett's Towing asserts also that it had "nothing to do with" any alleged extortion "other than to tow the vehicle after the Plaintiffs had been arrested," *id.* at 10, but that assertion does not address Plaintiffs' contention that by towing the vehicle, Jett's Towing participated in a larger enterprise, *Thomas* Doc. 82 at 11-12. Accordingly, Jett's Towing motion to dismiss the RICO claim against it is **DENIED**.

### 7. Conversion Claim

In Count XI, Mr. Thomas and Mr. Blackwell assert a claim against the Town for conversion under state law. *Thomas* Doc. 63 ¶¶ 263-73. It is unclear whether Plaintiffs meant to assert Count XI on behalf of a putative class. *See id.* ¶ 273.

The Town asserted that conversion is an intentional tort and municipalities are not liable for intentional torts under Alabama law. *Thomas* Doc. 74 at 32 (citing Ala. Code § 11-47-190; *Johnson v. Northpointe Apts.*, 744 So. 2d 899, 904 (Ala. 1999)). The court agrees. The *Thomas* Plaintiffs did not respond to that argument. *See* Doc.

83 at 34-35. Accordingly, the claims in Count XI are **DISMISSED WITH PREJUDICE**.

### 8. Shotgun Complaint Issues

A purpose of Rules 8(a)(2) and 10(b) is to allow the court to determine "which facts support which claims." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (cleaned up). Pleadings "that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Id.*

A typical shotgun pleading "is rife with immaterial factual allegations" and "numerous vague and conclusory allegations" that are "indiscriminately incorporate[d] and repeat[ed]" throughout. *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). Shotgun pleadings lead to "chaotic, expensive, and time-consuming litigation (including trial) on matters that ha[ve] little relevance to the true matters in dispute." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1332 (11th Cir. 1998). They do "great disservice to the administration of civil justice." *Id.* Shotgun pleadings presenting "serious constitutional issues" are particularly disallowed. *Magluta v. Samples*, 256 F.3d 1284 (11th Cir. 2001). When confronted with repeat shotgun pleadings, a district court is within its discretion to dismiss a complaint with prejudice. *Barmapov*, 986 F.3d at 1326; *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296-97 (11th Cir. 2018).

The shotgun pleading in *Barmapov* contained 249 paragraphs of general allegations that were incorporated into nine of the complaint's nineteen counts. 986 F.3d at 1325-26. It was dismissed with prejudice. *Id.* at 1326. The shotgun pleading in *Johnson Enterprises* was "a fifty-page, 173-paragraph complaint that began with thirty-seven paragraphs of general allegations that were incorporated by reference into each count" (the Eleventh Circuit set aside the plaintiff's "token attempts to leave out a few of the general allegations in certain counts of the complaint"). 162 F.3d at 1332 & n.91. "[T]he case was essentially a two-fold breach of contract action," but the shotgun pleading led to a trial on two tort claims and a $5.5 million judgment for the plaintiff. *Id.* at 1332. The Eleventh Circuit vacated the judgment, "limit[ed] the plaintiff's recovery to nominal damages of one dollar for breach of contract, and remand[ed] the case for the imposition of attorneys' fees" against the plaintiff. *Id.* at 1295, 1330-31; *accord Gordon v. Green*, 602 F.2d 743, 747 n.13 (5th Cir. 1979) (discussing a proceeding in which sanctions were imposed against the drafter of a 120-page complaint).

In *Magluta*, the complaint alleged that the conditions in which the plaintiff was confined were unconstitutional. 256 F.3d at 1283. The complaint "name[d] fourteen defendants, and all defendants [we]re charged in each count. The complaint [wa]s replete with allegations that 'the defendants' engaged in certain conduct," and failed to distinguish between "the fourteen defendants charged, though geographic

and temporal realities ma[d]e plain that all of the defendants could not have participated in every act complained of." *Id.* at 1284. The Eleventh Circuit vacated the judgment of the district court and remanded with instructions that the plaintiff replead the complaint, reasoning that the court was "unwilling to decide serious constitutional issues on the basis of this complaint." *Id.* at 1284-85.

Shotgun pleadings fall into "four rough types or categories." *Weiland*, 792 F.3d at 1321. The first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third is a complaint that does "not separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322-23. The fourth is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

The *Thomas* Plaintiffs' operative complaint, as well as the Proposed Amended Complaint, are shotgun pleadings. The Proposed Amended Complaint is sixty-six pages long, contains 297 paragraphs (many of which include numerous subparagraphs), and asserts claims in 12 counts and against more than a dozen

defendants. Each of its "multiple counts . . . adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. It is also replete with conclusory and immaterial allegations.

Plaintiffs' amended complaint must be "short and plain." Fed. R. Civ. P. 8(a). Accomplishing that task should be made easier by the fact that Plaintiffs' existing factual allegations support only: (1) a claim by Ms. Todd, Mr. Harris, Ms. Crawford, Mr. Kilgore, Mr. Jones, Mr. Wattson, and Mr. LeCroy (on behalf of a putative class) against the Town and Jett's Towing challenging a conspiracy to collect impound fees under the Eighth Amendment; and (2) a RICO claim by Ms. Todd, Mr. Wattson, and Mr. Harris (on behalf of a putative class) against Jett's Towing.

### B. Consolidation

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a). Plaintiffs assert that their actions involve common questions of fact because they challenge "traffic stops by the Town . . . [and] the impoundment of vehicles by Jett's Towing." *Wattson* Doc. 29 at 2. Plaintiffs further assert that their actions involve a common question of law whether those stops and impoundments violate the Fifth Amendment and amount to conversion under Alabama law. *Id.* The court agrees.

42

A court deciding whether to consolidate actions may consider "the burden on parties, witnesses, and the court, and . . . the length of time and relative expense involved in conducting a single trial or multiple trials." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 727 F. App'x 562, 570 (11th Cir. 2018). The court finds that consolidation is in the interest of judicial economy and efficiency for all parties and witnesses. The Town opposed consolidation on the ground that "ruling on its motion[s] to dismiss . . . prior to any potential consolidation of the two actions would promote judicial economy and resources." *Wattson* Doc. 33 at 2. That concern is no longer salient because the court now rules on the motions to dismiss and has considered the arguments in favor of dismissal in ruling on the *Wattson* Plaintiffs' motion for leave to amend to file a consolidated complaint.

The Town asserted also that consolidation is inappropriate because the plaintiff's claims "involve different facts that occurred on different days, involving different police officers and different criminal charges." *Id.* But Plaintiffs are challenging an alleged Town "practice," not merely a single incident or incidents. *Wattson* Doc. 29-1 ¶ 48. Accordingly, the fact that the Town's alleged practice was allegedly followed on several different occasions is a factor in favor of consolidation, not against it. The motion to consolidate is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, the motion to consolidate is **GRANTED** and the above-styled cases are **CONSOLIDATED**. *Wattson* Doc. 29. The motions to dismiss are **GRANTED** in part and **DENIED** in part. *Wattson* Doc. 32; *Thomas* Docs. 74, 75, 76, 77. The request for leave to amend is **GRANTED** as to: (a) claims that survive dismissal; and (b) claims that are dismissed without prejudice because of pleading defects. The request for leave to amend is **DENIED** as to claims that are dismissed with prejudice because repleading those claims would be futile.

Plaintiffs are **ORDERED** to file a consolidated class action complaint that complies with this order **WITHIN FOURTEEN DAYS**.

**DONE** and **ORDERED** this 12th day of May, 2023.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE